J. R. SHEPHERD, ADMINISTRATOR, v. NORTH CAROLINA RAILROAD COMPANY.

(Filed 12 November, 1913.)

1. **Railroads — Headlights — Warnings—Negligence Per Se—Proximate Cause—Trials—Evidence.**

   The running of a railroad train at night without light, signal, or other warning of its approach, is negligence *per se*, and where a person is injured on a dark night while attempting to cross the track at a place customarily used for crossing, within the limits of a populous town, by a train thus operated, the negligence of the company is continuous and the proximate cause, eliminating the question of contributory negligence, especially as the statute, Laws 1909, ch. 446, requires electric headlights to be used on locomotives.

2. **Same—Nonsuit.**

   In this case there was evidence tending to show that as plaintiff's intestate was on his direct route to his home on a dark night, he attempted to cross defendant's railroad track at a place usually crossed by pedestrians, and while the defendant's freight train was pulling away from the station, in town limits, the intestate was heard to scream and was found in a certain position on the track over which the train had just passed, 75 yards from the station; that the train had no headlight on the locomotive and was not giving signals or warnings as it moved away. The motion to nonsuit should have been denied.

APPEAL by plaintiff from *Peebles, J.,* at May Term, 1913, of ALAMANCE.

*W. H. Carroll for plaintiff.*
*Parker & Parker for defendant.*

CLARK, C. J.  This is an action for the wrongful death of plaintiff's intestate, Lacy Shepherd.  Upon the admissions in the answer and the uncontradicted testimony it appears that Lacy Shepherd died on the morning of 20 February, 1911, from injuries sustained by him the night before on the track of the defendant at Elon College.  He lived south of the railroad and about a quarter of a mile west of the station.  He was about 14 years of age, a student at Elon College, and was returning home from a Christian Endeavor meeting which had been held in one of the college buildings some 200 yards north of the track.  His usual crossing place going to and returning from the college to his home was at Main Street, immediately west of the depot building.  On approaching this crossing on that night, he found Main Street blocked by a long freight train, the engine being near the depot building and the rear of the train extending westward.  The engine was shifting cars upon the siding by lantern light.  The plaintiff's intestate, just before reaching the depot, left his comrades and attempted to cross the railroad track at a point about 75 yards east of the said depot.

There was evidence that he was knocked down and run over by the train which was going east from said station, the engine being without a headlight, and no signal of any kind being given to warn him of its approach.  His left leg was cut off entirely.  He was a bright young man, having perfect eyesight and hearing and in good health and vigor.  The testimony is uncontradicted that it was a dark, windy, cold, rainy night, and that the train was without a headlight or light of any kind showing its approach, and that without any warning or the ringing of a bell or the blowing of a whistle or otherwise, the train moved out from the depot going east, and immediately after it had passed the screams and cries of Lacy Shepherd were heard. Parties went immediately to him and found him lying just north of the railroad track and his foot was lying inside and just south of the north rail of said track.  The place where the accident occurred is within the corporate limits of Elon College and was very near two footpaths or crossings used by pedestrians living on south side of the track, going to and from the college buildings, which are on the north side of the railroad.

In *Heavener v. R. R.,* 141 N. C., 245, the Court approved an instruction that if the defendant "was running its train through the corporate limits of the town of Concord, and the track whereon the train was running was much used by the public, both in crossing the track and walking on it, and the jury should further find that on the night alleged it was running its train at a rapid rate without any headlight or other proper signal, and while so running ran over and killed the intestate; and if the jury should further find from the evidence that if there had been a proper light on the engine, or if the bell had been ringing, the intestate would have had notice of the approaching train in time to escape the danger, and that the plaintiff by reason of not having such notice or warning was injured, then such failure to have the headlight or other proper signal was continuing negligence, and would be the proximate cause of the injury."

That case cites *Stanley v. R. R.,* 120 N. C., 514, in which the defendant was held liable where the intestate was walking at night on the railroad track and was killed by being struck by a train which carried no light and gave no signal, and that it was error to instruct the jury that plaintiff could not recover if his intestate could have discovered the train by ordinary watchfulness and precaution, and by using his senses, since the failure of the defendant's train to carry a light was a continuing negligence and the proximate cause of the injury." *Stanley v. R. R., supra,* has been cited in many cases; see citations in Anno. Edition.

*Heavener v. R. R., supra,* has been cited with approval in *Morrow v. R. R.,* 147 N. C., 627, which held that it was evidence of negligence on the part of defendant if "the plaintiff when he was injured was where people in the vicinity were accustomed to walk, and under the circumstances he was entitled to notice of the approach of the train, if there was no headlight and it was so dark that he could not see it in time to leave the track," citing *Purnell v. R. R.,* 122 N. C., 832; *Heavener v. R. R.,* 141 N. C., 245. It has also been cited in *Allen v. R. R.,* 149 N. C., 258, and *Hammett v. R. R.,* 157 N. C., 322, which

held that the defendant company was negligent where the intestate was killed by a freight train backing along its track "on a dark night, without signals or warnings, and without light on the rear car."

Here the train was going forward, but as there was evidence that there was no light on the engine, and no signal given, the law applicable is the same.

This being a nonsuit, the evidence must be taken in the light most favorable to the plaintiff. *Cotton v. R. R.,* 149 N. C., 229. But, indeed, there was no conflicting testimony. The evidence was that his way home being blocked by a long freight train, the intestate, a bright and intelligent young man, was struck and fatally injured by the defendant's train about 75 yards east of the depot building, being at the time at or near a well known and much used crossing for pedestrians; that he was evidently on his way home and was going the best and nearest route to get there under the circumstances; that it was a dark, rainy night, and that he was run down and killed by a freight train on which there was no headlight and by which no signal of any kind was given of its approach. Among the numerous cases to sustain the proposition that this was negligence can be cited, in addition to those already quoted, *Holman v. R. R.,* 159 N. C., 44; *Whitesides v. R. R.,* 128 N. C., 229; *Powell v. R. R.,* 125 N. C., 370; *Cox v. R. R.,* 123 N. C., 604; *Fulp v. R. R.,* 120 N. C., 525; *Pickett v. R. R.,* 117 N. C., 637.

In *Snipes v. R. R.,* 152 N. C., 42, the Court says: "It is well established that the employees of a railroad company in operating its trains are required to keep a careful and continuous outlook along the track, and the company is responsible for injuries resulting as the proximate consequence of their negligence in the performance of this duty." How could this duty be performed in the night-time in the absence of a headlight? To the same effect, *Guilford v. R. R.,* 154 N. C., 607; *Edge v. R. R.,* 153 N. C., 214; *Sawyer v. R. R.,* 145 N. C., 29; *Arrowood v. R. R.,* 126 N. C., 629.

"Where the plaintiff's intestate was killed by the engine of the defendant while backing on a dark night over a crossing,

without light, signals, or other warning, in a thickly settled community, a clear case of negligence is made out, and without other evidence the question of contributory negligence does not arise." *Gerringer v. R. R.*, 146 N. C., 32 (in which the concurring opinion calls attention to the statute authorizing the abolition of grade crossings and the necessity of doing so); *Purnell v. R. R.*, 122 N. C., 832; *Stanley v. R. R.*, 120 N. C., 514; *Mayes v. R. R.*, 119 N. C., 758; *Lloyd v. R. R.*, 118 N. C., 1010.

It is a reasonable inference upon this evidence that if the train had been supplied with the proper headlight the plaintiff's intestate would most likely have seen its approach in time to have saved himself, or the engineer could have stopped the train in time to have saved his life, especially as the train was just pulling out, and could not have attained a very high rate of speed. If the train could have been stopped in time, it was negligence not to have done so. *Sawyer v. R. R.*, 145 N. C., 24; *Baker v. R. R.*, 144 N. C., 36.

The statute, Laws 1909, ch. 446, now requires every engine of the defendant to carry an electric headlight at night, and failure to do so was unlawful and *per se* negligence. This of itself entitled the plaintiff to have this case submitted to the jury. Even prior to the statute, failure to carry a headlight was held to be negligence. *Willis v. R. R.*, 122 N. C., 909, and cases there cited, and citations thereto in Anno. Ed.

This case differs from *Royster v. R. R.*, 147 N. C., 351, relied on by the defendant, because in that case the plaintiff stepped "in front of a train known to be approaching." It also differs from the other two cases cited by the defendant, *Beach v. R. R.*, 148 N. C., 153, and *Exum v. R. R.*, 154 N. C., 410, in that in those cases the deceased were killed in the daytime while walking on the track, and there was evidence that they did not look and listen for the approaching train.

The judgment of nonsuit must be

Reversed.