SUSAN W. HORNE ET AL., ADMINISTRATORS, v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 12 January, 1916.)

**Railroads—Headlights—Trials—Evidence—Nonsuit—Questions for Jury.**

On a motion to nonsuit upon the evidence the testimony of the defendant will be considered only when it is in the plaintiff's favor; and where the evidence tends to show that the plaintiff's intestate, a section foreman of defendant railroad company, was riding upon a hand-car at night on defendant's track, with other employees, where an approaching train with a headlight would have been seen for miles, and the car was struck by defendant's train coming rapidly upon it without a headlight, and not observed in time for the intestate to have saved himself, and causing his death, it is sufficient to be submitted to the jury upon the question of defendant's actionable negligence. Although the intestate was disobeying the orders of the company at the time, his contributory negligence on the facts in evidence was for the jury.

CLARK, C. J., concurring; HOKE, J., concurring in part; WALKER, J., dissenting; BROWN, J., concurring in the dissenting opinion.

APPEAL by plaintiffs from *Allen, J.,* and a jury at April Term, 1915, of CUMBERLAND.

HORNE *v*. R. R.

Action to recover damages for wrongful death, alleged to have been caused by the negligence of the defendant.

Plaintiffs' intestate was a section foreman of the defendant. He had been at work at New Berlin, and on the night he was killed he and other employees of the defendant went to Farmers on a hand-car. He was killed on his return, at night, by an engine of the defendant, which, according to the evidence of the plaintiff, had no headlight.

The evidence of the plaintiffs tended to prove that their intestate was a section foreman in the defendant's employ at New Berlin on 1 September, 1914. On that night he took the lever-car and went to Farmers to attend to some business, as there was no train in that direction, and took with him five or six hands. He did not say whether the business was his or the business of the company. He waited for the passenger train to pass, and then they put the lever-car on the track and started back to New Berlin. The track was straight at that point for 10 miles, 5 miles in each direction, and, according to plaintiffs' evidence, they were looking out both front and rear for any approaching train, though there was none scheduled to pass at that hour; they could have seen a headlight 5 miles off. Suddenly, 35 to 40 feet in front of them, out of the darkness there loomed up an engine which was running without any light at all, and at the rate of 50 or 60 miles an hour; that an alarm was given and everybody jumped off but the intestate Horne, who was struck and killed. The engine was going so fast that it went half a mile or at least a third before it stopped. A witness said that he could have seen a headlight on a straight track that night 10 or 12 miles; the witness further said that the lever-car could be seen from the engine at least three-quarters of a mile off under the glare of an electric headlight. He further testified that there were three public crossings between the station at Farmers and where Horne was killed, and that the engine did not blow at either of these crossings or ring any bell. In going from New Berlin to Farmers they went on the main line 5 miles east in the direction of Wilmington; they started about 7:30 p. m. and got there about 8:10 p. m., and started back at midnight. The witness further said that some foremen used their lever-cars at night, but it was not an habitual custom. There was no evidence from the plaintiff that it was against the rules of the company to use the lever-cars at night. Several witnesses testified that the night was slightly foggy, but there was no light whatever on the engine, and if there had been they could have seen it; that there was neither headlight nor sidelights; that if the engine had had a headlight the engineer could have seen three-quarters of a mile ahead of him; that the witness had ridden on an engine with an electric headlight many times and kept a lookout, and could see at night three-quarters of a mile ahead under the electric light. That the deceased said that he was going down to Farmers to see the agent, and

that his force had to move from New Berlin the next morning. The witnesses also testified that if there had been an electric headlight on the engine they could have seen it 2 or 3 miles down the track, in ample time to have gotten the car off the track, which they could have done in a couple of minutes.

The defendant introduced a rule of the company forbidding the use of hand-cars at night or in foggy weather without the permission of the roadmaster, and the roadmaster testified that he had not given permission to use the car on the night the intestate was killed.

The defendant also introduced evidence tending to prove that the engine was properly equipped with lights and that signals were sounded at the several crossings.

At the conclusion of the evidence his Honor entered judgment of nonsuit, and the plaintiffs excepted and appealed.

*Cook & Cook, J. M. Williford and Sinclair, Dye & Ray for plaintiffs. Rose & Rose for defendant.*

ALLEN, J. The evidence for the plaintiff, which must be accepted as true for the purpose of nonsuit, establishes the negligence of the defendant in that it was running its train in the night-time without a headlight, and it is conceded that the judgment of nonsuit cannot be sustained except upon the ground of contributory negligence.

There are two valid objections to coming to this conclusion.

The first is that, while after much discussion the rule was adopted that a judgment of nonsuit might be entered if it clearly appeared from the evidence of the plaintiff that he was guilty of contributory negligence, this rule has never been extended so as to permit the consideration of evidence offered by the defendant tending to prove contributory negligence.

In this case the negligence attributed to plaintiffs' intestate is that he was upon the track in violation of the rules of the company, and there is nothing in the plaintiffs' evidence to show that a rule was in existence or that the intestate was at the time of his death violating any rule.

The burden of the issue of contributory negligence was on the defendant, and in order to sustain this burden it introduced a rule of the company which forbade the use of the hand-car at night without the permission of a superior officer, and it also introduced the officer to prove that he had not given the permission. If this evidence coming from the defendant was not believed by the jury, the issue of contributory negligence could not have been answered against the plaintiff, and the jury alone has the right to say whether or not the evidence is true.

This principle is vital under a system which makes jurors triers of the fact, and a departure from it would invest the judge with the power to pass on the weight of the evidence and to determine the fact.

The second is that if it be conceded that the intestate was guilty of negligence the question of proximate cause was for the jury, and ought to have been presented to them either under a separate issue or under an instruction that although the plaintiff was upon the track in violation of the rules of the company, and was therefore negligent, that he would be entitled to recover damages if, notwithstanding that negligence, the jury found as a fact that if the defendant had had a headlight the intestate would have been discovered in time to avoid the injury, or that if the headlight had been present the plaintiffs' intestate would have seen it in time to take the car from the track.

The evidence on the part of plaintiffs tends to prove that the track of the defendant in the direction from which the train was coming was straight for a distance of 5 miles; that a headlight could have been seen at that distance; that those on the hand-car were looking in that direction for the approach of a train; that if there had been a headlight they could and would have seen it in time to take the hand-car from the track; and that with a headlight the engineer could easily have seen the car in time to avert the injury.

In *Heavener's case,* 141 N. C., 245, the Court approved an instruction that "If the jury should further find from the evidence that if there had been a proper light on the engine, or if the bell had been ringing, the intestate would have had notice of the approaching train in time to escape the danger, and if the plaintiff by reason of not having such notice or warning was injured, then such failure to have the headlight or other proper signal was continuing negligence and would be the proximate cause of the injury," and this was affirmed in *Shepherd v. R. R.,* 163 N. C., 520.

If the plaintiffs' intestate was negligent in violating a rule of the company, was his negligence greater than the negligence of a person who is killed while upon the track in a state of voluntary drunkenness? It would seem not, and in *Griffin v. R. R.,* 166 N. C., 626, it was held that the question of the contributory negligence of one killed upon the track while intoxicated was for the jury, the Court saying: "We have the facts in evidence that the engine was without any headlight; furthermore, that it ran over and killed the intestate. . . . We have, therefore, in evidence both the negligence and the injury. . . . It is immaterial whether the intestate was a licensee or a mere trespasser. The defendant owed it to him and to all other persons, whether on the track rightfully or wrongfully, to have had a headlight upon its engines in order that the engineer might be enabled to discover, not only human beings, but any obstruction upon the track. . . . There is evidence in the

record from which the jury may find, if they see fit, contributory negligence upon the part of the intestate; but the evidence is not of that character as will justify the Court in any view of it to sustain a motion to nonsuit upon that ground."

This case has an important bearing upon the question before us, because it establishes the principle that although the intestate was negligent, the defendant owed him the duty to have a headlight, *"whether on the track rightfully or wrongfully,"* and that he could not be declared guilty of contributory negligence as matter of law.

If so, why does not the same rule prevail in this case, as the most that can be said of the conduct of plaintiffs' intestate, if he was violating a rule of the defendant, is that he was wrongfully on the track?

In *Tyson v. R. R.,* 167 N. C., 216, the plaintiff's intestate was killed by a train running without a headlight, and the issue of contributory negligence was answered in favor of the defendant.

A recovery of damages was sustained, and *Justice Brown* says, in discussing the question as to whether there was evidence to support the finding that notwithstanding the negligence of the intestate, the defendant's engineer by the exercise of ordinary care could have avoided the injury: "There is evidence in this case that the engineer, by keeping a watchful lookout, with a good headlight, could have seen the intestate in the position described by the witnesses, and, going up grade, could have stopped his train within 50 yards. There is evidence that he had a very poor oil headlight, and it was about dusk at the time when his train killed the intestate.

"Taking all of these facts together, we think there is sufficient evidence to have gone to the jury for their consideration to the effect that if the engine had been properly equipped with a proper headlight, and the engineer had kept a diligent lookout ahead of him, he could have discovered, by reasonable care, the condition of the intestate, and could have stopped his train in time to have saved his life."

Again, the Court said in *Cullifer v. R. R.,* 168 N. C., 311: "It is well settled in this State that where the plaintiff is guilty of contributory negligence the defendant must exercise ordinary care and diligence to avoid the consequences of the plaintiff's negligence, and if by exercising due care and diligence the defendant can discover the situation of the plaintiff in time to avoid injury, the defendant is liable if it fails to do so."

In *McNeill v. R. R.,* 167 N. C., 390, the Court concludes the opinion with this statement: "The theory upon which recoveries are sustained when a person upon the track is killed or injured by a train running in the night without a headlight, although not apparently helpless, is that the absence of the headlight is negligence, and as its presence would probably give notice of the approach of the train by throwing light on

HORNE v. R. R.

the track and upon the person, the failure to have the light is some evidence of proximate cause."

In other words, if it is admitted that both the defendant and the intestate of the plaintiff were negligent, the negligence of the plaintiffs' intestate does not bar a recovery unless it was the proximate cause of the injury, and the question as to whether it was the proximate cause is for the jury, if two reasonable minds could come to different conclusions upon the question; and here there is evidence that although the intestate was negligent, if the defendant's train had been running with a headlight he would not have been injured, because the headlight would have been seen, if the evidence of the plaintiff is to be believed, in time to take the car from the track, or the engineer could with a headlight have discovered the intestate in time to avoid the injury.

In *Boney v. R. R.,* 155 N. C., 107, the plaintiff's intestate, an engineer, was killed by running into an open switch, and at the time of his death he was violating a rule of the company by running his train at a speed of 30 miles an hour, when the rule required that he should not approach the switch at more than 6 miles an hour. A recovery of damages was sustained upon the ground that although he was negligent, the defendant could have averted the injury by the exercise of ordinary care. The Court said: "If the intestate knew that there was no light at the switch, and was running in excess of 6 miles an hour, he was negligent; but it is not every act of negligence on the part of the plaintiff that is contributory negligence in its legal sense. It is not contributory unless it is the real cause of the injury; nor is it so if the defendant, by the exercise of ordinary care, can avert the injury, notwithstanding the negligence of the plaintiff."

Reversed.

CLARK, C. J., concurring: This is an appeal from a nonsuit in an action for wrongful death. It is elementary law requiring no citation of authorities that in such cases the evidence for the plaintiffs must be taken as absolutely true and with the most favorable inferences that can be drawn from it. If that were not so, a plaintiff would be deprived of his constitutional right to a trial by jury, since the jury might find the facts according to his testimony and in the light most favorable to him.

In no aspect of the case should the plaintiff have been nonsuited. If the engine was carrying no headlight at all, which must be taken as true on a nonsuit, then under *Greenlee v. R. R.,* 122 N. C., 977, and *Troxler v. R. R.,* 124 N. C., 189, which have been cited and approved very many times and which have been held unquestioned law up to date —see citations in Anno. Ed.—contributory negligence could not have availed as a defense. In *Greenlee v. R. R., supra,* it is held that the

failure of a railroad company to equip its trains with modern safety appliances—in that case, self-couplers—was negligence *per se*, continuing to the time of an injury, and made the company liable even as to an employee, whether such employee contributed to the injury by his negligence or not. It was held that the company in such case could not defend either upon the ground of contributory negligence or assumption of risk.

In *Troxler v. R. R.*, 124 N. C., 189, the Court held, reaffirming *Greenlee v. R. R.*, that "Reason, justice, and humanity, principles of the common law, irrespective of congressional enactment and Interstate Commerce Commission regulation, require modern safety appliances to be used on a train, and when there is failure to do so the common carrier is guilty of culpable, *continuing* negligence which cuts off the defense of contributory negligence and the negligence of a fellow-servant, for such negligence is the *causa causans* even as to an employee." For a stronger reason, the failure to have an electric headlight upon an engine running at great speed at night and in violation of law is such negligence as precludes the defense of contributory negligence. This has been held again and again as to engines running at night without an electric headlight. These cases are familiar to every lawyer. Among the more recent are *Shepherd v. R. R.*, 163 N. C., 522; *Powers v. R. R.*, 166 N. C., 599, and there are many others.

In the very recent case of *Powers v. R. R.*, 166 N. C., 601, the Court held that "running a train at night without a headlight is continuing negligence. *Lloyd v. R. R.*, 118 N. C., 1010; *Mayes v. R. R.*, 119 N. C., 758; *Mesic v. R. R.*, 120 N. C., 491; and *Willis v. R. R.*, 122 N. C., 905. The Legislature has adopted that rule by making the failure to carry a headlight negligence *per se*. By Laws 1909, ch. 446, 3 Pell's Rev., 2617, all railroads are required to carry electric headlights upon their locomotives upon their main line, as this was, and by 3 Pell's Revisal, 3753a, a violation of that requirement is made a misdemeanor. This Court has always held that any act of a common carrier which is a violation of law is negligence *per se*."

It is uncontradicted here that this engine was running on the main line between New Berlin and Farmers (and if it was not, that is a matter in defense), and the failure to carry a headlight of at least 1,500-candle power being made an indictable offense by Revisal, 3753a, the engineer and the defendant were both guilty of manslaughter. It is impossible that the defendant should not be civilly liable for damages for an act for which it is responsible to answer on the criminal docket.

While we must take the evidence of the plaintiff as true, it is not amiss to say that the engineer, who was a witness for the defendant, testified as follows: "They use electric headlights on the road from Wilmington to Florence (which is where this accident occurred). 1

did not have an electric headlight that night. I had an oil light."
He went on to say that on this night he could have "seen ahead 30 or
35 feet," and that he was going 35 miles an hour. The conductor of
that train also testified that "On the engine there was an oil headlight
. . . an oil headlight like that would not distinctly illuminate 30 feet
ahead of me. I would judge that it would throw a light about 30 feet—
something like that. I would not say exactly." The fireman also
testified that it was an oil headlight, and that it was his business to keep
it clean.

W. H. Jones, the roadmaster, also testified for the defendant that
"An engine with an oil headlight will disclose an object 25 feet away."
S. M. Beasley, also a roadmaster and witness for the defendant, testified
that an electric headlight can be seen 6 or 8 miles, and that with such
a light a lever-car could be seen by an engineer 300 feet away probably.
The evidence for the plaintiffs, which must be taken as true, is that the
electric headlight could have been seen by the parties on the lever-car
from 2 to 5 miles away and that the lever-car could have been seen by
the engineer with an electric headlight three-quarters of a mile off.

Even if we take the defendant's evidence as true, this engine was
"running wild," that is, it was an extra, not running on any schedule
and was being run at midnight from 30 to 35 miles an hour on the main
line, in violation of law without an electric headlight and with an oil light
which could be seen only some 25 or 30 feet away. If we take, as we
must, the plaintiffs' evidence to be true, the engine was running 50 or
60 miles an hour without any headlight or sidelights whatever. The
judge might well have told the jury that if they believed the defendant's
own testimony the company and the engineer were running in violation
of law on the main track without an electric light and were all guilty
of manslaughter, and that in this action the only question was as to the
amount of damages.

It was settled by this Court in Deans v. R. R., 107 N. C., 686, that
notwithstanding a trespasser was lying asleep on a track, the railroad
company was responsible if the engineer by proper watchfulness
could have discovered him in time to have avoided killing or injuring
him. This has been followed ever since. In Pickett v. R. R., 117 N. C.,
632, it was said that this principle was derived from Davies v. Mann, 10
M. & W., 545, and that "The party who has the last clear opportunity of
avoiding the accident, notwithstanding the negligence of his opponent,
is considered solely responsible for it," citing 2 S. & R. Neg., 165. Ever
since this has been the uniform law recognized in this State. It has
been applied in cases like Arrowood v. R. R., 126 N. C., 629, where the
deceased was a trespasser lying down on the track, and the defense set
up was that owing to the road winding around the mountain the engineer
could not see him by reason of the smokestack, and the fireman was

busy, but the Court held that if the engineer and fireman were not sufficient lookout the defendant should have had a third man for that purpose. It was applied in *Clark v. R. R.,* 109 N. C., 430, where the deceased was walking along the railroad, and indeed further back, in *Troy v. R. R.,* 99 N. C., 298, where the Court affirmed the present writer, then on the Superior Court Bench, in holding that though walking on the track by a trespasser would constitute contributory negligence, it would not bar recovery if the engineer by reasonable care could have avoided the injury.

The decisions are uniform that in cases of injury to a trespasser on the track there should be a third issue submitted, "Whether, notwithstanding the contributory negligence of the plaintiff, the defendant could with reasonable care have avoided the injury," and that the burden of this issue is upon the defendant. If, therefore, the *Greenlee* and *Troxler cases* and the long line of decisions in approval thereof should be overruled, and if, further, we could disregard the statute which makes the failure of the locomotive to carry an electric headlight of at least 1,500-candle power an indictable offense, and should overrule the decisions which uniformly hold that when an act is committed in violation of a statute the defendant cannot excuse itself by pleading contributory negligence, and treating this as simply a case where the deceased was a trespasser on the track, still the burden of proof would be on the defendant on the third issue to prove that, notwithstanding the contributory negligence of plaintiffs' intestate, it could not by reasonable care have avoided killing him.

It is not shown by plaintiffs' evidence that he was forbidden to go on the track, and the burden was on the defendant to show that fact, and the jury might not have believed it. But if it were admitted that the rules forbade him to go on the track with a lever-car at night, he could have been in no worse case than a trespasser, and the burden was on the defendant to show that with reasonable care, such as the use of an electric headlight, running at an ordinary rate of speed and blowing at the crossings, the defendant could not with a reasonable outlook have avoided killing the intestate. Whatever the obedience which should be paid to the rules of the company, they are not of such superior authority to the statutes of the State that a violation by an employee of a rule of the company entitles the defendant to disregard the requirements of law as to headlights and reasonable care in keeping an outlook, or that it entitles the defendant to consider that the deceased was outlawed and that it owed him no duty.

Hoke, J., concurring: I concur in the disposition made of this appeal, on the ground that the testimony clearly shows negligence on the part of the company in running its engine without a headlight, and which resulted in intestate's death.

I deem it not improper to say, however, that as now advised, if it should be made to appear that the intestate at the time he was killed was running a hand-car on the railroad track contrary to the orders or rules of the company, it would be such an act of contributory negligence on his part as would bar a recovery. As the evidence tending to establish this defense on the record as it now appears all comes from the testimony introduced by defendant, it may not be considered on a motion to nonsuit. I therefore concur in the judgment awarding a new trial.

WALKER, J., dissenting: Plaintiffs sued to recover damages for the death of their intestate, caused, as they alleged, by the negligence of the defendant. The evidence was to the effect that W. B. Horne was, on 14 September, 1915, employed by defendant as foreman of an extra section force, and on the night of said day he rode on his lever- or hand-car with six other employees from New Berlin to Farmers station, about 4 miles distant, and remained at the latter place several hours, at his uncle's home, on his own business. His shanty-car was at New Berlin. He started back to Farmers station about midnight on the lever-car, and when they had gone about one-half of a mile they were overtaken by an engine and plaintiff was killed by the collision. There was evidence that the engine had no light and had not given the usual signal at the crossing near by, and was running at a high rate of speed. There was evidence, on the contrary, to show that the engine was provided with all its lights, headlight, classification lights, and also two rear markers, and running 30 or 35 miles an hour, and that it gave all station and crossing signals. This engine was going from Wilmington to Chadbourn to relieve another engine that had been disabled on a branch line, and there was evidence that it was properly equipped and in good condition, with headlight burning and brakes in proper order. The intestate had been forbidden to use a hand-car after dark, except by special authority or authority of the roadmaster, which he did not have that night, and he was not, at the time he was killed, transacting any business or performing any duty for the railroad company, but was on a visit to his uncle.

We will, in the consideration of the case, confine ourselves to so much of the testimony as is most favorable to the plaintiffs, according to the usual rule. *Ridge v. R. R.*, 167 N. C., 510; *Harris v. Guaranty Co., ibid.*, 624.

If we take plaintiffs' own view of the evidence, we can see no error in the judgment of the court. The intestate had control and management of the lever-car on which he was riding. It was in his possession and was furnished to him for the purpose of better performing his work as section master, and he had no right to use it for his own private purposes. When he did so, he became a trespasser on the track of the

company, and had no greater right than any ordinary trespasser using the track as a footway, and perhaps less right, as he was obstructing the track under very dangerous circumstances, which were calculated to imperil his life and the lives of his coemployees, or helpers, and also the property of the company and the lives of those on its engines and cars. It has been said that a railroad company owes a greater duty to one on its track with its consent than it does to a trespasser, *Boggera v. R. R.,* 64 S. C., 164; and especially would this be true as to one who is using its tracks in the night-time in open violation of its rule made for his own as well as the protection of other persons, and of the company's property. It does not ordinarily owe to him the duty of equipping or of running its trains in any particular manner or at any special rate of speed. *R. R. v. Stegall,* 105 Va., 538. A trespasser who uses the tracks of a railroad company, especially when he has been forbidden to do so, must look out for himself and take proper measures and precautions for his own safety, if he is not disabled and can do so. The following rules in such cases have been formulated by a careful and learned text-writer:

"It may be stated, as a general rule, that any one who goes upon the track or premises of a railroad company, except at a public crossing or in a highway, without the invitation or license of the company, express or implied, is a trespasser. . . . The general rule is that the owner or occupier of premises owes no duty to a trespasser thereon except to do him no willful or wanton injury. A trespasser is a wrong-doer, and it is a general principle of jurisprudence that the courts will not aid a wrong-doer. The fact that the trespasser is a wrong-doer does not, however, justify malicious, wanton, or willful maltreatment of him, and the failure to use reasonable care to avoid injury to him after the discovery of his danger may sometimes be sufficient evidence of willfulness or wantonness. But neither negligence nor willfulness can ordinarily be shown in this way where an adult or person apparently able to take care of himself is upon a railroad track, because the railroad employees have a right to assume, in the absence of anything to the contrary, that he will get off the track or take such other precautions as may be available to avoid injury to himself. . . . A railroad company owes trespassers no contractual duty. Indeed, as already stated, the general rule is that it owes them no duty except not to willfully injure them. . . . What we have already said concerning the limited duty to trespassers applies to trespassers upon a railroad track. It is generally and, we think, correctly held that a railroad company is not bound to keep a lookout for trespassers upon the track. . . . As a general rule, the company's employees may presume that one apparently able to do so will get off the track in time." 3 Elliott on Railroads, secs. 1252 to 1258.

Of course, these principles have been modified by us where the tres-
passer is on the track either in a helpless condition or deprived of his
bodily or mental faculties in some way, so that he is not able to care for
himself; but there are no such facts in this case.

The company was not bound to anticipate that the intestate would
deliberately violate its instructions and use the car on its tracks after
darkness had set in. He was, therefore, guilty of negligence; and if
there are any degrees of negligence, his may well be called gross, and
plaintiffs have no right to say that the defendant should have looked out
for him when he did not look out for himself, and was where he was not
expected to be, with a dangerous obstruction, when he was killed.

But we will assume that defendant was negligent also, and treat the
case as one of mutual negligence. It was no more than that, as, if
defendant had no light, neither did plaintiffs' intestate, and if he had
provided himself with one, which he could easily have done, and should
have done when using the track without permission or contrary to orders,
this unfortunate accident would not have occurred. He knew, or should
have known, that the company had the right to use its track at any and
all times, and, even if there was no regular train scheduled for that
particular time, that emergencies often arise when its engines and cars
have to be brought into immediate use, as was the case here.

The track of a railroad, as it seems necessary to repeat, most emphat-
ically, again, is always a place of danger, and any man who uses it for
his own purposes, and especially when he has been positively forbidden
to do so, should exercise the highest degree of care and vigilance for his
own safety, as we have so often said. *McAdoo v. R. R.,* 105 N. C., 140;
*High v. R. R.,* 112 N. C., 385; *Syme v. R. R.,* 113 N. C., 558; *Exum v.
R. R.,* 154 N. C., 408; *Talley v. R. R.,* 163 N. C., 567; *Abernathy v.
R. R.,* 164 N. C., 91; *Hill v. R. R.,* 166 N. C., 598; *Ward v. R. R.,*
161 N. C., 180; *Treadwell v. R. R.,* 169 N. C., 694, and *Hill v. R. R.,
ibid.,* 740; and there are many other such authorities, but we have tried
to cite some of the earliest decisions with some of the latest, so as to show
that there has been a strict, steady, and unvarying adherence to the
doctrine.

As especially applicable to plaintiff's contention, and as fully answer-
ing it, we would direct attention to *Beach v. R. R.,* 148 N. C., 153, where
we unanimously held that: "A railroad track is intended for the run-
ning and operation of trains, and not for a walkway, and the company
owning the track has the right, unless it has in some way restricted
that right, to the full and unimpeded use of it. The public have
rights as well as the individual, and usually (and reasonably) the
former are considered superior to the latter. That private convenience
must yield to the public good and public accommodation is an ancient
maxim of the law. If we should, for a moment, listen with favor to

the argument, and eventually establish the principle, that an engineer must stop, or even slacken his speed, until it may suit the convenience of a trespasser on the track to get off, the operation of railroads would be seriously retarded, if not made practically impossible, and the injury to the public might be incalculable. The prior right to the use of the track is in the railway (especially) as between it and a trespasser who is apparently in possession of his senses and easily able to step off the track." And in *Treadwell v. R. R., supra,* we said, in reference to the same kind of contention: "A court of the highest authority has said that where it is known, as it should be, that a railroad company's right of way is being constantly used for its trains, and is at all times liable to be used for their running and operation in transporting freight and passengers, as a public carrier under the highest legal obligation to serve the public diligently and faithfully as such . . . 'the track itself, as it seems necessary to repeat with decided emphasis, is itself a warning. It is a place of danger, and a signal to all on it to look out for trains, and it can never be assumed that they are not coming on a track at a particular time when it is being used for the convenience of trespassers or licensees, and, therefore, that there can be no risk to a pedestrian from them.' "

We have specially referred to these cases, as it is insisted by plaintiffs that defendant's engine was not making a regular trip, and, therefore, caught the intestate unawares. Engines do not run regularly without any cars, except in shifting yards or at stations. This engine was running "light," as it is said in the case, to take the place of one on another line, which had in some way been disabled, and this illustrates what a dangerous place a track is, as at any moment, day or night, it may be used between the times fixed by the regular schedules, and for this reason it is always "live," in the sense that an engine or a train may pass a given point at any time. If the intestate had taken any thought for his own safety, he would have carried either a lantern or some other device as a warning of his presence on the track, or not have used the track at all without or contrary to orders.

But we will assume that both the intestate and the defendant were negligent in more than one respect, and it then becomes a case of concurrent negligence, both acts of negligence uniting at one and the same time to cause or produce the result; and in support of this view we need cite only two cases decided by this Court. In *McAdoo v. R. R.,* 105 N. C., 150, it appeared that the plaintiff was stricken by an engine while he was on, or near, one of the defendant's tracks, and the Court said with reference thereto: "If the plaintiff had alleged that the defendant company, or its servants, had willfully, wantonly, purposely, or maliciously run an engine against and injured him, a very different

question would have been presented. In *Manly v. R. R.*, 74 N. C., 655, this Court said: 'When the injury arises neither from malice, design, nor wanton and gross neglect, but simply the neglect of ordinary care, and the parties are mutually in default, the negligence of both being the immediate and proximate cause of the injury, a recovery is denied, upon the ground that the injured party must be taken to have brought the injury upon himself.' That case was subsequently cited with approval as to the first point in *Rigler v. R. R.*, 94 N. C., 610, and in *Walker v. Reidsville*, 96 N. C., 382. See, also, *R. R. v. Lowdermilk*, 15 Ind., 120; *R. R. v. Adams*, 26 Ind., 76; 2 Woods R. L., 319." And we held in *Watts v. R. R.*, 167 N. C., 345, 346: "The nonsuit must clearly be sustained by reason of the plaintiff's own negligence, existent to the very time of the impact; for, according to his statement, he was under the car for his own purposes, on a live track, engaged in the performance of no duty whatever, awake and in full possession of his faculties, and utterly inattentive to his own safety up to the very time of the injury. If it be conceded that the defendant was negligent in backing on the siding without signal, the case presents a typical case of contributory negligence, concurring with that of the plaintiff and barring his claim for damages. *Ward v. R. R.*, 167 N. C., 148." But if the defendant was guilty of negligence, it was not actionable unless, as held in *McNeill v. R. R.*, 167 N. C., 396, it was the proximate and not merely a concurring cause of the injury. This is, of course, a very just doctrine, because no man will be permitted by the law to take advantage of his own wrong, and if his own want of care proximately contributes to his own hurt, or if it concurs with the wrong of some one else in doing so at the time the injury is received, the law denies a recovery by him, attributing the result to the fault of both.

We held in *Hill v. R. R.*, 166 N. C., 592, that a motor-car—and the same rule, of course, applies to a lever- or hand-car, as they are practically of the same make—moving on a track of the company in the night should be provided with proper and sufficient lights or signals that would indicate its presence on the track, and that for any injury caused by a failure to display a light or give other warning of its presence the company would be liable. But in that case the liability was based upon the ground that the person who had run the car without a light was acting under the authority of the company, while here he had no such authority, but was acting of his own will, and really contrary to orders. We only cite that case to show that the doctrine as to lights and signals applies to hand-cars being run in the darkness, and the intestate should have displayed a light or given some warning of the car being on the track, especially as it was there at an unusual time, when the company had forbidden him to use it. It is an admitted principle that "where a servant voluntarily, and of his own motion, exposes himself to risks

outside the scope of his regular employment, without or against the order of the master, or vice-principal, and is injured thereby, the master is not liable." 26 Cyc., p. 1224, and note 8. This text is supported by a great array of authorities to be found in the note. *R. R. v. McWhorter,* 115 Ga., 476; *Green v. R. R.,* 85 Minn., 318; *Parent v. Mfg. Co.,* 70 N. H., 199. We have made a similar ruling in *Whitson v. Wrenn,* 134 N. C., 86; *Avery v. R. R.,* 137 N. C., 135; *Stewart v. Carpet Co.,* 138 N. C., 64; *Hicks v. Mfg. Co., ibid.,* at p. 329; *Holland v. R. R.,* 143 N. C., 439; *Patterson v. Lumber Co.,* 145 N. C., 45. "The employee is not absolved, in cases of this sort, at least, of all obligations to have a proper care for his own safety and to work with prudence in the presence of known and observed danger; nor is he free to disobey his employer's orders, where such disobedience becomes the proximate cause of the injury, either sole or concurrent." *Hicks v. Mfg. Co.,* 138 N. C., 329. "A servant who voluntarily, without request from the master, engages in work which he was not hired to perform assumes the risk of injury attendant thereon." *Parent v. Mfg. Co., supra; McGill v. Granite Co.,* 70 N. H., 125. "Rules and orders are promulgated and are to be enforced for the protection of the public, of fellow-servants, and of the employer's property, and cannot be disregarded or annulled by an employee with impunity. The latter cannot disobey orders upon the ground that, in his opinion, there is no reason for their further observance. When one employed to do a designated kind of work, or to work at a particular place, voluntarily goes to a place different from that assigned by the contract of employment, he cannot successfully insist that he is within the protection of the rule that the master must exercise ordinary care to protect him against injury." *Green v. R. R.,* 85 Minn., 318. "Here the servant was ordered to do his work in a safe way, and he preferred to do it in another and what proved to be a dangerous way. Why should the master be liable if the servant acted in disobedience to his orders and was thereby hurt? It must be admitted that he was the author of his own injury. If it was necessary that the method adopted by him should have been not only in disobedience of his orders, but in itself dangerous, in order to visit upon him the consequences of his refusal to observe his master's directions, it surely is not required that it should have been obviously dangerous. It is quite sufficient to bar his recovery if he knew that his method was a dangerous one, and chose to do his work in that way rather than in the manner pointed out by his master. Why should the danger be obvious if he had knowledge of it? If it had appeared that obedience to his master's orders as to the manner of moving the truck was obviously dangerous, he had a right to refuse to do the work; but even then he could not select another and dangerous way to do it, and charge his master with the consequence thereof, and

especially if the danger of the method which he adopted was known to him at the time." *Whitson v. Wrenn, supra.*

The other cases we have cited above are just as emphatic in announcing the doctrine, now become thoroughly well established, that if the servant chooses to do a thing he is not employed to do, the master owes him no legal duty, and if he is injured, especially if the act is a dangerous one, he must suffer the consequences of his wrong, for as to the particular act, not being within the scope of the service he was engaged to do, the law imputes the injury to his own wrong and not to any neglect of the master, who has directed him to do other things, or not to do his work in the way he has adopted. The principle more strongly applies where the dangerous act which injures him has been forbidden by his employer to prevent injury to him or others. "Persons on railroad tracks are bound to apprehend that locomotives may be swiftly approaching at any time, and are bound to be continually on the watch for them and to leave the track in season to avoid collisions with them." *Copp v. R. R.,* 100 Me., 568. That is our doctrine, also, as it has been so often stated and very recently reiterated. This unfortunate accident would not have occurred had the intestate not have trespassed upon the track and subjected himself to constant and great danger, or had not violated instructions. This is the dominant cause of his injury; but whether so or no, it was an active and efficient cause operating up to the very moment of the collision, and his was exactly the same kind of negligence as he imputes to defendant, in one respect—the absence of lights or other signals; but his negligence was aggravated by the fact that he was violating orders, while the engineer was not, but was acting in the regular and normal performance of his duty. It would be a very strange conclusion if the defendant could be charged with liability for an accident resulting from the misconduct of the intestate, which was begun, continued, and ended through his own negligence, bringing upon him, by his own fault, the disastrous consequences.

We may add that if plaintiffs' evidence discloses that intestate was the author of his own injury, or that his negligence caused it proxi-. mately, either by itself or by concurring with that of some other person, a nonsuit is proper, as he thus proves himself out of court. This is settled by the cases already cited, as well as by *Neal v. R. R.,* 126 N. C., 634; *Royster v. R. R.,* 147 N. C., 347; *Wright v. R. R.,* 155 N. C., 329; *Fulghum v. R. R.,* 158 N. C., 555; *Thompson v. Construction Co.,* 160 N. C., 390; *Dunnevant v. R. R.,* 167 N. C., 232.

It is suggested in the opinion of the Court, but not conceded, that the validity of the nonsuit depends upon the contributory negligence of the intestate. In one sense his negligence was contributory, as it helped to cause his death; but upon the facts of this case, it was, at least, con-

curring at the very time of this collision between the engine and the lever-car.

The authorities cited in the opinion of the Court are not applicable to the facts of this case. In *Heavener's case,* 141 N. C., 245, the jury found that the plaintiff had looked and listened, and was free from negligence, the decision being confined practically to defendant's negligence, of which there was some evidence. The boy, in *Shepherd v. R. R.,* 163 N. C., 520, had the right to cross the track on his way home, and was guilty of no negligence, the decision turning, as in *Heavener's case,* upon whether there was evidence of the defendant's negligence. The same may be said of *Griffin v. R. R.,* 166 N. C., 624, as it presented the question of the defendant's negligence, with this further fact, which distinguishes it from our case, that the intestate was "drunk and down," and not able to take care of himself. The negligence of the helpless man upon a track is a fact accomplished and passed, and the force of his negligence is fully spent, and therefore the duty is imposed upon defendant to look out and care for him. *Justice Hoke* said in *Sawyer v. R. R.,* 145 N. C., 24, that "Although the plaintiff, in going on the track, may have been negligent; when he was struck down and rendered unconscious by a bolt of lightning, his conduct as to what transpired after that time was no longer a factor in the occurrence." But this is not so where the person injured is in the possession of his faculties and able to care for himself, and continues to be actively negligent down to the very moment of the injury. This clearly presents a case of concurring negligence under the principle laid down by *Justice Hoke* in *Watts v. R. R., supra,* and unanimously adopted by this Court.

The rules of the company were introduced without objection, and were treated as authentic. They provided that "hand- or push-cars must not be used except in the company's business, and never after dark, except by special authority of the roadmaster. Neither will they be allowed on the track in cloudy or foggy weather, when objects half a mile distant cannot be distinctly seen." The plaintiff continuously violated this rule, to the very last. It will be seen that the rule requires that in cloudy or foggy weather, when objects cannot be distinctly seen half a mile distant, the hand-cars shall not be run at all. The plaintiffs' evidence shows that it was dark, the weather was thick and foggy, and an object could not be seen half a mile away. According to his testimony, the engine, a large object, was not seen until it was right at them, although the track was straight for 5 miles each way. We know, besides, that an engine has some light about it, as it must have fire in order to run. The hand-car had no light at all, and was a much smaller object.

But apart from this view of the case, the act of going on the track, as we have said, in the night, with a hand-car, without any light or

signal, and during a fog, was itself negligence, as any prudent man, or even a reckless one, should have known that it was exceedingly dangerous. If the engineer had been injured, and had sued G. W. Horne, the section foreman, or if the railroad company had sued for the damage to its engine, could there be any doubt as to the negligence of the intestate?

*Tyson v. R. R.,* 167 N. C., 216, cited by the Court in its opinion, was another case of a drunk and helpless man upon the track, and in *Cullifer's case,* 168 N. C., 311, also cited by the Court, the second issue as to the plaintiff's negligence was not answered, and, besides, the plaintiff was exercising a right she had to cross the track, and the negligence consisting in failing to look and listen before going upon the track had spent its force, and her horse backed while on the track, and reared and pranced in full view of those on the approaching engine, and could have been seen in time to prevent the injury. It was not a case of concurring negligence, but of proximate cause. In *McNeill's case,* 167 N. C., at page 396, also cited by the Court, *Justice Allen* says: "It is not the absence of the headlight, nor the impact of the train, which determines the liability, but the impact of the train brought about by or as the proximate result of the absence of a headlight." But there can be no such proximate cause here, if the intestate's negligence was continuously active, and united with that of defendant, at the very moment of the injury, to produce it, and the joint negligence, therefore, was its proximate cause. Decisions of this Court, like the charge of the judge, and also like wills, deeds, and other instruments, should be considered with reference to their particular facts and as an entirety, with strict attention, of course, to the whole record, and when thus viewed, they fully sustain my conclusion.

BROWN, J., concurs in dissenting opinion of WALKER, J.