CHARLES Q. BAKER v. N. and S. RAILROAD COMPANY.

(Filed 26 February, 1907).

1. **Railroads—Negligence—Evidence—Counsel's Statement of Pertinency.**—When it is contended in defense to an action for negligence, that the horse hitched to a conveyance containing the plaintiff was standing near the railroad track, apparently under control of the driver, but became unruly and got upon the track too late for the observant engineer of an approaching train to

avoid the injury, which contention is disputed, it is error for the Court below to exclude an answer to an appropriate question, when it is stated by the defendant's counsel to be for the purpose of showing that the plaintiff had said to the witness that the horse had stopped near the crossing, though the answer would be cumulative to testimony previously given by one who had heard the conversation, the testimony proposed to be elicited being an admission of the plaintiff himself, and therefore naturally stronger than that of the other witness.

2. **Special Instructions—Facts Reasonably Assumed from Evidence.** —It is the duty of the trial Judge to give a requested prayer for special instruction, which is correct in itself, material to the case and based upon certain phases of facts reasonably assumed upon the evidence; and a general and abstract charge of the law applicable to the case is not sufficient. The error is not cured by giving such requested charge upon an unanswered issue concerning which the instruction was not asked.

3. **Imputed Negligence.**—The doctrine of imputed negligence does not apply to one who is in a conveyance as a guest of another, and who is not driving at the time or in charge of the conveyance.

CIVIL ACTION, tried before *McNeill, J.,* and a jury, Fall Term, 1906, Superior Court of PASQUOTANK County.

This action was brought to recover damages for injuries received at a railroad crossing, which plaintiff alleges were caused by the negligence of the defendant in the management of one of its trains. The plaintiff and Bud Mann were riding in a buggy with Cecil Williams, who was driving. The horse and buggy belonged to Cecil's father. The three occupants of the buggy were all boys about fifteen years old. They drove over the crossing to a cotton mill in Elizabeth City to collect their wages, and finding that they could not get their money at that time they drove back, intending to hitch the horse to a tree on the other side of the track, and when they had reached the crossing the horse became frightened at the whistle of the engine, which was blown about that time, and backed on or very near the track, so that he

could not be driven across. When the train came in full view of the crossing it was about one-quarter of a mile away and the dangerous position of the plaintiff and his companions could easily have been seen by the engineer. The engine struck the buggy and killed Cecil Williams and Bud Mann and severely injured the plaintiff. This was plaintiff's version of the facts.

The defendant alleged that when the boys got in the buggy at the mill, Cecil Williams said that he intended to drive to the crossing and stop so as to "gentle" his horse, and that he did drive to the crossing and stop his horse very near the track. That the horse was standing there apparently under control of the driver when it was first seen by the engineer, and that when the train had approached too near the crossing to be stopped before reaching it, the horse became unruly and got upon the crossing. That immediately the fireman notified the engineer, and he reversed the engine and did all that could be done to stop the train, but failed to do so, as it was too near the crossing, when the danger was first discovered, to be stopped in time to avoid a collision with the buggy.

There was evidence to sustain each of these contentions. The defendant had introduced a witness, M. H. Snowden, who testified that he heard a conversation between plaintiff and F. L. Garrett a few months after the accident, in which the former stated that Cecil Williams said when they left the mill that he would drive to the crossing and stop there to "gentle" his horse, and that he did drive there and stop. The fireman testified that the horse was standing at the crossing when last seen by him before the engine was reversed. The defendant proposed to prove by F. L. Garrett what the plaintiff had said to him in that conversation as to "why the horse was driven up close to the track." This tes-

timony was offered in order to show that the horse had
stopped on reaching the crossing, and to corroborate the fire-
man, who testified that the horse was standing there when
last seen by him before the engine was reversed. This evi-
dence was excluded by the Court. There was testimony to
the effect that the engineer applied the brakes as soon as he
saw the horse and buggy approaching the crossing, and when
the horse stopped near the crossing, and appeared to be under
control, he released the brakes and the train continued at its
former speed, that is, fifty miles an hour, until the engineer
was notified by the fireman of the danger, and reversed the
engine. He could not see the horse and buggy when he was
told by the fireman of the danger, as the boiler of the engine
obstructed his view, he being on the right-hand side of the
cab.

The defendant requested the Court to charge the jury that
if the engineer applied the brakes when he first saw the horse
and buggy approach the crossing, and then released them
when the horse stopped and stood near the crossing, appar-
ently under the control of the driver, and the horse did not
start to cross the track until it was too late to stop the train
and prevent the collision, and the engineer then did all that
could be done to stop the train, the defendant was not guilty
of any negligence, and they should so find. The Court did
charge, at the defendant's request, that "If the horse was
stopped before he reached the track, and appeared to be
under control, defendant was not required to stop the engine
or slacken the speed because of the presence of the buggy and
horse, and was not guilty of negligence in failing to do so
on that account, and the jury shall so find." Issues as to
negligence, contributory negligence, the last clear chance
and damages were submitted to the jury.

The substance of the instruction which was requested by

the plaintiff upon the first issue, as to the defendant's negligence, and refused by the Court, as to that issue, was given upon the third issue, as to the last clear chance. The Court charged generally that if the engineer failed to exercise ordinary care in approaching the crossing after he saw the position of the horse and buggy, and this caused the collision, the jury should answer the first issue "Yes"; otherwise, they should answer it "No." The jury, answering the first issue, found that the plaintiff was injured by the negligence of the defendant, and in answer to the second issue, that there was no contributory negligence. They assessed the damages, but did not answer the third issue. Defendant's motion for a new trial was overruled, and judgment entered for the plaintiff, from which the defendant appealed.

*Aydlett & Ehringhaus* and *J. B. Leigh* for plaintiff.
*Pruden & Pruden* and *Shepherd & Shepherd* for defendant.

WALKER, J., after stating the case: The defendant asked the witness Garrett, "What was said by the plaintiff, in the conversation with him, as to why the horse was driven close to the track?" If the defendant's counsel had not indicated what they expected to elicit from the witness by this question, the ruling of the Court excluding it might perhaps be sustained upon the principle that the competency and materiality of proposed testimony, which is ruled out, must appear before we can see that any error has been committed by the Court. *Knight v. Killebrew,* 86 N. C., 400; *Sumner v. Candler,* 92 N. C., 634; *State v. McNair,* 93 N. C., 628; *State v. Skidmore,* 109 N. C., 795; *State v. Dula,* 61 N. C., 437. But here the defendant's counsel stated, as the record afterwards shows, that the question was asked for the purpose of showing that the horse and buggy were stopped

at the crossing, as contended by the defendant and testified by the fireman, it appearing by the previous testimony of the witness Snowden, who heard the conversation between the plaintiff and Garrett, that the former had so stated in that conversation. Even if the evidence was merely cumulative to that of Snowden, it was nevertheless competent and relevant, and being that of the witness who himself had the conversation with the plaintiff, it was perhaps entitled to greater weight and would receive more consideration from the jury than that of Snowden. The prior testimony of Snowden clearly shows its relevancy, even if the statement of counsel as to what they expected to prove was not in itself sufficient for that purpose. The offer of proof included not only the declaration of Cecil Williams, *in via,* as to where he was going, which was part of the *res gestæ* (*State v. Dula, supra*), but the further fact that he actually stopped at the crossing. We were not told why the evidence was excluded. It was not hearsay, and being otherwise competent and material, because it tended to sustain the defendant's theory as to how the injury was caused, it should have been admitted.

The general charge of the Court in respect to the degree of care required of the defendant's servant in approaching the crossing with the train, would perhaps have been fully sufficient in the absence of any request for more specific instructions. *Boon v. Murphy,* 108 N. C., 187; *State v. Jackson,* 13 N. C., 563; *Patterson v. Mills,* 121 N. C., 258; *Cowles v. Lovin,* 135 N. C., 488; *Yow v. Hamilton,* 136 N. C., 357. It is also true that the Court is not obliged to adopt the very words of an instruction asked to be given, provided in responding to the prayer it does not change the sense or so qualify the instruction as to weaken its force. *Brink v. Black,* 77 N. C., 59; *Chaffin v. Manufacturing Co.,* 135

N. C., 95. These are rules which are observed in all appellate courts. But it is an equally well-established rule that if a request is made for a specific instruction, which is correct in itself and supported by evidence, the Court, while not required to adopt the precise language of the prayer, must give the instruction, at least in substance, and a mere general and abstract charge as to the law of the case will not be considered a sufficient compliance with this rule of law. *Knight v. Railroad,* 110 N. C., 58; *Chesson v. Lumber Co.,* 118 N. C., 59; *State v. Dunlop,* 65 N. C., 288; *Young v. Construction Co.,* 109 N. C., 618. We have held repeatedly that if there is a general charge upon the law of the case, it cannot be assigned here as error that the Court did not instruct the jury as to some particular phase of the case, unless it was specially requested so to do. *Simmons v. Davenport,* 140 N. C., 407. It would seem to follow from this rule, and to be inconsistent with it if we should not so hold, that if a special instruction is asked as to a particular aspect of the case presented by the evidence, it should be given by the Court with substantial conformity to the prayer. We have so distinctly held recently in the case of *Horne v. Power Co.,* 141 N. C., at p. 58, in which *Justice Connor,* speaking for the Court and quoting with approval from *State v. Dunlop,* 65 N. C., 288, says: "Where instructions are asked upon an assumed state of facts which there is evidence tending to prove, and thus questions of law are raised which are pertinent to the case, it is the duty of the Judge to answer the questions so presented and to instruct the jury distinctly what the law is, if they shall find the assumed state of facts; and so in respect to every state of facts which may be reasonably assumed upon the evidence."

Whether the horse and buggy were on the crossing and the dangerous situation of the plaintiff and his companions was

observed or could have been discovered by the engineer, when the engine first came in view, so that it could have been stopped in time to prevent the collision; or whether when first seen by the engineer the horse was standing near the crossing, apparently under the control of its driver, and continued in that position until it was too late for the train to be stopped before reaching the crossing (*Markham v. Railroad,* 119 N. C., 715), were the two alternative phases presented by the evidence, and the defendant had the right by a special instruction to require the Court to direct the attention of the jury to the theory upon which it relied, provided it was supported by evidence, and we think it was. The Court should, in response to the prayer, have instructed the jury specially as to the law arising upon the recited facts, if they should find them to exist, and in refusing to do so there was error. *Savage v. Davis,* 131 N. C., 159. The fact that the Court gave the instruction on the third issue did not cure the error in refusing it on the first, as the jury did not answer the third issue at all, having found that there was no contributory negligence. The instruction on the third issue, therefore, was of no avail to the defendant, and its liability was left to depend solely upon the response to the first issue, without any definite instruction as to proximate cause or the last clear chance having reference to the special' facts of the case.

It is unnecessary to consider the remaining questions, as they may not again be presented. It may be said, though, upon the issue as to contributory negligence, that if the act of Cecil Williams in driving to a point near the crossing for the purpose of "gentling" his horse was negligence on his part, it cannot be imputed to the plaintiff, who was merely riding with him in the buggy as his guest, and unless the plaintiff was otherwise negligent, the finding of the jury on

the second issue was correct. The doctrine of imputed negligence is so ably and exhaustively discussed by *Justice Douglas* in *Duval v. Railroad,* 134 N. C., 331, a case much like this one, that we are satisfied simply to refer to that case without further comment.

There must be another trial because of the errors above pointed out.

New Trial.