### G. R. GILLIAM v. ATLANTIC COAST LINE RAILROAD COMPANY AND WALKER D. HINES, DIRECTOR.

(Filed 5 May, 1920.)

**1. War—Statutes—Carriers of Goods—Lessor and Lessee—Government Control.**

The acts of Congress as to government supervision and control of railroads did not require or intend that the Government should take possession if the management could be procured by lease or agreement with just and reasonable compensation to the companies for the possession of its properties, the object of the legislation being to leave these corporations in the control of their own officials as far as possible, and to exercise only

such general management as was necessary for the purposes of carrying on the war.

**2. Same—Torts—Negligence—Return to Private Ownership.**

A lease to a railroad company by the Government of its railroad's properties under the statutory supervision and control for the purposes of carrying on the war, does not relieve the carrier of liability for the actionable negligence of its servants or employees, and the fact that the property of such corporation has, since the commission of the tort, been turned back to private ownership cannot affect the carrier's liability therefor, as lessee at the time of its commission.

**3. Negligence — Evidence — Railroads— Carriers— Torts— Government Control—Statutes.**

In an action by an employee against a railroad for the defendant's negligence as the plaintiff was getting off its train, the evidence tended only to show that the plaintiff was employed to work with others as a carpenter at a Government camp, while the property of the carrier was under a lease from the Government, under the statute for war purposes, and that he rode daily on a shuttle train composed of cattle cars, to and from his work; that he was aware of the character of these cattle cars, and his foot slipped on a piece of steel at the door of one of them, usual in its construction, as he was getting off when the train was at a standstill for the usual place and purpose, and fell to his injury: *Held*, no evidence of the defendant's actionable negligence, but only of an unanticipated accident, and defendant's motion as of nonsuit thereon should have been granted.

APPEAL by defendants from *Calvert, J.,* at September Term, 1919, of CUMBERLAND.

This is an action against the Atlantic Coast Line Railroad Company and Walker D. Hines, Director General, for the recovery of damages for personal injuries sustained by the plaintiff 6 November, 1918, on his return to Fayetteville from Camp Bragg, where he was a carpenter employed by Government contractors. He testified that he was residing in Fayetteville, and each day went out to the camp site on a "shuttle train" composed of cattle and box cars, which left early in the morning, and returned to the city late in the evening; that from 6 October to 6 November he had been riding back and forth to and from the camp in a cattle car, and knew the kind of cars that were being run on this train; that on the evening of 6 November, 1918, he came back to the city after dark, at or about seven o'clock, and as the men were crowding out of the door of the cattle car plaintiff went to get out and his foot slipped. He says: "I went to get out and in stepping over the steel door clip, as I went to step over my foot slipped. This steel is in all cattle cars, and I got my right foot caught, and it threw me out on my left side in the coal cinders and clinkers." The engine of the train stopped at the Norfolk Southern station, or below it, and the cars were back across Hay Street and

towards Maiden Lane. He said: "This was the place the train had been stopping; had stopped there when the plaintiff rode before, the place the engine stopped was the usual place."

The defendants introduced no testimony. The defendants moved for a judgment of nonsuit, which was denied. Verdict and judgment for plaintiff; appeal by defendant railroad company.

*W. C. Downing and Sinclair & Dye for plaintiff.*
*Rose & Rose for defendants.*

CLARK, C. J. The counsel for the Atlantic Coast Line Railroad contend that the company is not liable in an action for damages because its line was under operation and control of the Government, under the general supervision of its codefendant, Walker D. Hines, Director General. But they admitted that the company was being so operated under a lease made by it to the United States Government, which lease was authorized by an act of Congress, 29 August, 1916, ch. 418; U. S. Compiled Statutes, 1918, sec. 1974a. Under the act of Congress the president was *"empowered* to take possession and assume control of any system of transportation, or any part thereof, and to utilize the same, to the exclusion, as far as may be necessary, of all other traffic thereon, for the transfer or transportation of troops, war material, and equipment or for such other purposes connected with the emergency, as may be needful or desirable." It was not required or expected that the Government should take possession if the management of the railroads could be procured by agreement, and, accordingly, with very few exceptions, the control and management of the various railroads in this country were acquired by an actual lease from each company. The proclamation issued by the President 26 December, 1917, and 11 April, 1917, both recite that the Director General "shall enter upon negotiations with the several companies looking to agreements for just and reasonable compensation for the possession, use, and control of their respective properties, and fix such just compensation as provided by law," and further, "nothing herein contained, express or implied, shall be deemed in any way to impair the right of the stockholders, bondholders, creditors, and other persons having interest in said system of transportation, or in the profits thereof, to receive just and adequate compensation for the use and control and operation of their property hereby assumed."

It is not necessary to quote in full the statute and proclamations on the subject. The object of the legislation and of the Government was to leave these corporations in the control of their own officials as far as possible, and to exercise only such general management as was necessary for the purposes of carrying on the war.

Accordingly, as has been said, leases were made by an agreement between the Director General, acting for the Government, and the railroad companies with very few exceptions. "By virtue of the lease with the Atlantic Coast Line Railroad the relation of lessor and lessee existed, and under the authority of *Logan v. R. R.,* 116 N. C., 940; *Harden v. R. R.,* 129 N. C., 354; 55 L. R. A., 784; 85 Am. St., 744, the company was liable for damages sustained in the transportation of freight or passengers, and service upon the local agent was service upon the Director General, and also upon the companies represented by him. *Grady v. R. R.,* 116 N. C., 952." This was held in *Clements v. R. R.,* in a unanimous opinion, *ante,* p. 225, in which the Court also said: "The plaintiff could not be deprived of his right of action against the company whose engine he was operating because the road was temporarily, but by lawful authority, in the control and management of a lessee, or a receiver. The plaintiff had nothing to do with that matter. The receipts and expenses of the operations will be adjusted between the company and lessee or receiver, when the accounts are settled, and the road will soon be returned to the company in all probability."

The whole matter is fully discussed and determined in that case, and also in *Hill v. Director General,* 178 N. C., 609, in which *Hoke, J.,* said: "The defendant, the Director General, must be considered a party *only* as being in the management and control of the defendant railroad," and that the company was "responsible for the torts committed while under Government control," citing numerous cases, at p. 610, where the Court said: "The act of Congress applicable, and under which the Director General professes to have taken over the control and management of the road, being an act of the 65th Congress, entitled 'An act to provide for the operation of transportation systems while under Federal control,' approved 21 March, 1918, 40 U. S. Statutes at Large, part 1, p. 457, contains, among others, the following provision, being the former portion of section 10: 'Carriers, while under Federal control, shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws, or at common law, except in so far as may be inconsistent with the provisions of this act, or any other act applicable to such Federal control, or with any order of the President. Actions at law, or suits in equity, may be brought by and against such carriers, and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government.'"

The liability of the railroads in this State for damages such as this have been recognized without exception in every case since the passage

of the act of Congress, in the Superior Court and this Court, and there would have been unutterable confusion if shippers and passengers and others could not have looked to the lessee company for damages. The point has been contested only in the above cases, *Clements v. R. R.,* and in *Hill v. Director General,* and the unanimous opinion of the Court was rendered in both cases, after full consideration, sustaining the liability of the carrier. And, as was said in *Clements v. R. R., supra,* recovery against the carrier in such cases will not be affected by the return of these corporations to their owners, or rather the abandonment of supervision by the Government, which has since taken place on 1 March, 1920.

As for the other ground of demurrer to the evidence, however we are of opinion that there was no evidence of negligence on the part of the carrier, and that the nonsuit should have been granted. The train composed of cattle and box cars was, so far as the evidence shows, the only transportation out to the camp site and back. The plaintiff knew that this was the only accommodation that was furnished, and he chose to avail himself of it. He testified that as he went to get out, "in stepping over the steel door clip my foot slipped." He also says that "this was the place the train had been stopping and where the engine stopped was the usual place." The injury was due to an accident—the slipping of the plaintiff's foot—for which the defendants were in nowise to blame.

On review of the entire testimony for the plaintiff, for none was introduced by the defendant, we think, but as to this ground only, the motion of nonsuit should have been granted.

Reversed.