JENNIE S. PARKER v. SEABOARD AIR LINE RAILWAY ET AL.

(Filed 16 March, 1921.)

1. **Railroads—Federal Control—Federal Agent—Director General—Parties—Statutes.**

Under the Federal statute, actions at law that would lie against a common carrier before the United States assumed control of them would also lie after the act restoring them to private control as to injuries accruing during Government control against the agent designated by the President, the damages recovered to be paid out of the revolving fund created by the act, and the Director General and the railroads are both proper parties to the action.

2. **Railroads—Crossings—Signals—Warnings—Negligence.**

Evidence that the plaintiff was injured while attempting to cross the track of the defendant railroad company about a half hour after sunset on a cloudy evening, and in a drizzling rain; that the place of the injury was a most frequented crossing in a town, and that the defendant's train was running backward without light on its advancing end, and without signal or other warning, or a flagman properly placed to give any, is sufficient to take the case to the jury upon the issue of defendant's actionable negligence.

3. **Railroads—Crossings—Automobiles—Negligence— Evidence— Signals —Warnings.**

The plaintiff was injured while a passenger in an automobile endeavoring to cross defendant railroad company's track on a dark evening about sunset, being struck by defendant's locomotive: *Held,* under the evidence in this case it was for the jury to determine whether the defendant was negligent.

4. **Same—Lights.**

It is negligence for a railroad company's employees in charge to back its engine over a frequently used street crossing of a town after dusk without a light or other signals or warning, or without placing some one to warn pedestrians of the approach of the train.

5. **Railroads—Crossings—Negligence—Evidence—Watchmen.**

Where there is evidence tending to show negligence on the part of the railroad company's employee to give timely notice at a frequented crossing of a town of the approach of the defendant's train, which, with the other evidence, was sufficient to be submitted to the jury on the issue of defend-

PARKER *v.* R. R.

ant's negligence; it is also competent to show that this employee had been ill for a long time, and was incompetent on account of his physical infirmities.

**6. Evidence—Negligence—Contributory Negligence—Burden of Proof—Railroads.**

The burden of proof is upon the defendant railroad company to show contributory negligence of a passenger in an automobile, struck while endeavoring to cross its track.

**7. Automobiles—Passengers—Negligence—Railroads—Crossings.**

Where a passenger has been injured while attempting to cross a railroad track in a collision with defendant's train, the negligence of the driver may not be imputed to her without showing that she had control over him, or was in some way responsible for his negligent act.

**8. Same—Contributory Negligence—Sudden Peril.**

The plaintiff, in her action to recover damages for personal injuries alleged to be caused by the negligence of the defendant railroad company while crossing its track as a passenger in an automobile, is not barred upon the issue of contributory negligence if it is shown that the defendant's negligence had placed her in sudden peril, and she, in acting upon the direction of defendant's employee, had been compelled to do so suddenly and in an emergency that did not permit deliberation.

**9. Damages—Personal Injury—Disfigurement—Humiliation.**

Where there is evidence tending to show that the *feme* plaintiff had been physically disfigured on account of an injury negligently inflicted, entitling her to recover damages, testimony in her behalf, as to the measure of damages, that the injuries so received were embarrassing and humiliating to her is competent.

**10. Evidence—Negligence—Cities and Towns—Ordinances.**

The introduction of an ordinance of a town regulating the speed of trains backing upon the track, and properly proven, C. S., 2825, and requiring a signal light to be displayed, will not be regarded as error on appeal, when it is proven that upon the evidence in the case the jury has found, upon a trial, without legal error, the negligence of the defendant's employees proximately caused the personal injury for which damages were sought in the action.

**11. Automobiles—Negligence—Passengers—Railroads.**

Where the plaintiff was a passenger in an automobile, and was injured by defendant's railroad train while the automobile was crossing the track, and the plaintiff had no control over the actions of the driver of the car, the only duty imposed on plaintiff was to look and listen and to warn the driver of the approaching danger. The charge of the court in this case is approved.

WALKER, J., dissenting; STACY, J., concurring in the dissenting opinion.

APPEAL from *Lyon, J.*, at August Term, 1920, of HALIFAX.

This action is brought to recover $100,000 damages for personal injuries sustained in a crossing accident at Weldon, N. C., 10 February,

1920. Action was originally brought against Seaboard Air Line Railway Company and Walker D. Hines, Director-General of Railroads, but at the trial, by consent of counsel, John Barton Payne, Director General of Railroads, as agent designated by the President under the Transportation Act, was substituted as defendant in lieu of Walker D. Hines.

Plaintiff alleges negligence in that the defendant's crossing watchman caused the driver of the automobile in which plaintiff was riding as a passenger to be stopped on the railroad track immediately in front of a train moving backward, in the dark, without a light, and without giving any signal, at a greatly·frequented crossing in the town of Weldon, and in that the defendant failed to keep a proper lookout at the crossing, and failed to have a light at the rear of the train, as required by ordinance of the town of Weldon.

Plaintiff suffered the loss of both legs, one above and one below the knee, as the result of the accident.

Defendants based their defense upon three theories of the case: first, that there was no negligence on the part of the defendants; second, that the plaintiff was guilty of contributory negligence; and third, that the negligence of plaintiff's sister, who was driving the car, was the proximate cause of plaintiff's injury.

The jury returned a verdict for $45,000, and defendants appealed.

*Travis & Travis, Ashby W. Dunn, and Daniel & Daniel for plaintiff.*
*George C. Green, R. C. Dunn, and Murray Allen for defendants.*

CLARK, C. J. The plaintiff was riding as a passenger in an automobile, and on 10 February, 1920, at a greatly frequented crossing, a little after six p. m., the automobile was struck by the rear car of a backing train. It was a drizzly, rainy evening, and in the automobile, besides the driver, Mrs. Scott, there was the plaintiff seated on the front seat to the right of the driver, four young ladies, and Mrs. Scott's son, when it reached the crossing in front of the Terminal Hotel in Weldon. At that point where the defendant's track crosses the street, there are four tracks which converge until the street which is the First Street in the town (and on which the party was traveling) intersects Walnut Street. Beyond the crossing the railroad and First Street extended are almost parallel with each other, going west, the direction in which the automobile was moving. Before the intersection of said First Street and the railroad the angle is very acute and the railroad was to the right of the street getting nearer and nearer until the crossing is reached.

The rear of the car had the curtains in place, but on the front seat, where the plaintiff sat, there were no curtains, she being on the right and

the driver, Mrs. Scott, to the left. The evidence is that the car was being driven along the street slowly and came almost to a standstill, and the evidence is that both Mrs. Scott and Mrs. Parker looked across the tracks and up and down the tracks, and both testified that they were clear. As they drove along First Street going west towards the crossing, which is just in front of the hotel, the plaintiff testified she saw some freight cars standing still at the right some 400 feet, near the Union Station. Just prior to the approach of the automobile to the crossing, a freight train of 19 cars had come from the direction of Roanoke Rapids to Weldon, and had pulled up across this crossing, and then had gone on in the direction of the Union Station, and had passed the switch between the crossing and the Union Station preparatory to backing into another track, and these cars were standing still, according to the plaintiff's testimony, near the Union Station. As the automobile slowly approached the crossing these cars commenced backing towards the crossing slowly, without a light, or any one upon the advancing train to give warning.

The evidence is that the conductor had gone into the yard office to report the train, and sent out one of his brakemen, who reached the train too late. The engineer was at the other end of the 19 cars, down towards the river beyond Union Station, and knew nothing of the collision until he had put his train away. One of the brakemen, who was on the other side of the train at the switch, could not see the automobile, and the other brakeman was about half way the train and knew nothing about what was happening. According to the evidence, this was the situation as the automobile approached the crossing, which it is testified was clear. The defendant had provided a flagman or crossing-master at that point. He had formerly worked in the express office, but on account of his age and infirmities the company had retired him, and the defendant had then employed and stationed him at this point. The evidence was that he was old and infirm, and that at this crossing more vehicles passed in a day than at any other crossing in the county.

The evidence is that just as the automobile started across the track this agent appeared and cried, "Stop, stop, stop! Jump, jump, jump!" Mrs. Parker, who was on the right and nearest the car on the backing train, started to open the door and attempted to get out. One foot was on the ground and one on the running board when the forward car, moving slowly and noiselessly, struck her on the shoulder, knocked her down, ran over and crushed one of her legs just above the knee; and then the train, for some unexplained reason, moving back cut off the other leg between the ankle and the knee; her shoulder was also broken. The automobile was struck just in rear of the front wheel and pushed around. The front door was battered and the front fender bent. One

SCENE OF INJURY

of the young ladies was thrown over the head of another who was trying to leave the car.

The plaintiff was 44 years of age, and her normal weight before injury was 223 pounds. There was testimony as to her injuries and sufferings by physicians and others.

There is evidence that the sun set 10 February, 1920, at 5:36 p. m. This was not a scheduled train, and the crossing-master who gave the order to jump was not examined as a witness.

Both defendants assign as errors that the court refused to set the verdict aside because it was against the weight of the evidence, and because the damages were excessive, but these are matters that are not reviewable on appeal. *Edwards v. Phifer,* 120 N. C., 405, and citations in Anno. Ed.; *Trust Co. v. Ellen,* 163 N. C., 47; *Boney v. R. R.,* 145 N. C., 248, in Anno. Ed., *Cooke v. Hospital,* 168 N. C., 256.

The defendant railroad company and the Director General, John Barton Payne, filed separate answers, and the railroad company seeks to avoid liability on the ground that it was being operated by the Government.

The act of Congress to provide for the termination of the Federal control of railroads, approved 20 February, 1920, sec. 206 (a), provides that actions at law "of such character as prior to Federal control could have been brought against such carrier, may, after the termination of Federal control, be brought against an agent designated by the President, and such action may be brought in any court which but for Federal control would have jurisdiction of the cause of action had it arisen against such carrier." Another subsection provides that final judgment shall be promptly paid out of the revolving fund created by section 210 of said act.

This exception need not be again discussed, as it has been fully considered, and we have repeatedly decided that both the Director General and the corporation itself are proper parties in such actions as this. *Clements v. R. R.,* 179 N. C., 225; *Hill v. Director General,* 178 N. C., 609, citing numerous cases. The above have been reviewed and reaffirmed since in *Gilliam v. R. R.,* 179 N. C., 508; *Vann v. R. R.,* 180 N. C., 659; *McGovern v. R. R., ib.,* 219.

The plaintiff rests her case largely upon the ground that it was dark, and the ordinances of Weldon required that there should be a "light at the rear end of the train and front end of the train at night"; and even if it was not night or not dark, the defendant failed to give timely warning, and there was evidence that there was no light at the end of train, and no notice given of the approach of the train except the warning to jump given by the defendant's crossing-master, which contributed, it would seem, if it did not cause the injury to the plaintiff. In any

event, the running of the train backwards without a light, signal, or other warning of its approach was negligence. *Shepherd v. R. R.,* 163 N. C., 518, quoting numerous cases, among them *Purnell v. R. R.,* 122 N. C., 832, in which the plaintiff's intestate was killed by a backing train in the same town of Weldon, and at a short distance from the scene of this occurrence, the train backing into the depot without displaying a light from the front end of the leading car, and without a flagman to give warning. The precedents are too numerous, as quoted in *Shepherd's case,* to be again reviewed.

The evidence in the present case was that the sun set at 5:36 p. m., and that the injury to the plaintiff occurred a few minutes after 6 o'clock; that there was no light on the advancing train; that it was a cloudy evening, and drizzling rain, and that it was a most frequented crossing. It was for the jury to say whether or not it was negligence for the defendants not to have had a light on the advancing end of the train, which was running backwards. *Powers v. R. R.,* 166 N. C., 602; *McNeil v. R. R.,* 167 N. C., 396; *Dunn v. R. R.,* 174 N. C., 258. And, also, whether there was a light or not.

There was no error in admitting proof of the ordinance of the town. The ordinance did not change the law already laid down in *Purnell v. R. R.,* 122 N. C., 840. It was negligence to back the train over the crossing without a light if it was dark, or without a flagman if it was not. *Lloyd v. R. R.,* 118 N. C., 1010; *Mesic v. R. R.,* 120 N. C., 490; *Allen v. R. R.,* 149 N. C., 260. The authorities are thus summed up in *Russell v. R. R.,* 118 N. C., 1109: "A person who drives up to a crossing in a town or city where there is a custom to close the gates so as to prevent the passage of vehicles when trains are approaching, and open them when there is no danger, is not negligent if he drives upon the track, because the watchman is not on duty." The plaintiff had the right to expect the company would not omit to give the usual alarm, and is not culpable for acting upon that supposition. The watchman should have known if this train was going to back. The train had passed there a few minutes before.

The occupants of the automobile had a right to rely upon the protection that should have been given at this public crossing by a light on the front end of the backing car, or by a flagman or by a watchman, especially as there were no gates. It would seem from the evidence that when the watchman discovered that the train was backing, he did run out and give a warning by shouting to "Stop, stop"; but this must have been too late, as he added, according to the evidence, "Jump, jump, jump," and in obedience to that direction the plaintiff did jump and was injured. It was for the jury to say where the flagman was and what he did and whether he gave sufficient and timely warning. As the

PARKER v. R. R.

injunction to stop and the order to jump were given simultaneously, it must have been too late, and the train must have already reached the crossing, as the plaintiff was injured in obeying the instructions to jump. Evidently the flagman did not appear until the automobile was either on the track or near enough to it to be struck by the backing train. There was evidence that the watchman had been sick for a long time before he was given this appointment, and on account of his infirmities had been retired by his former employer, the express company. He was old and slow in his movements. There was ample evidence to submit to the jury the question as to negligence of the defendants, and it was fairly submitted to the jury, who have found it in the affirmative.

As to the contributory negligence, the burden of which was upon the defendants, the plaintiff was not driving the automobile, but was only a guest or passenger in the car. There is no evidence that she had any control over the movements of the car, and the negligence of the driver, if there was any, cannot be imputed to the passenger. *Duval v. R. R.,* 134 N. C., 333; *Baker v. R. R.,* 144 N. C., 43, and citations (Anno. Ed.); *Hunt v. R. R.,* 170 N. C., 444, which distinguishes *Bagwell v. R. R.,* 167 N. C., 611, which was relied upon by the defendants; Thompson on Negligence, sec. 502; 20 R. C. L. Negligence, sec. 137; *Herman v. R. I.,* L. R. A., 1515 A, 766.

In sudden peril or emergencies while the plaintiff was "bound to take active measures to preserve herself from impending harm, she was by no means held to the same judgment and activity under all circumstances. The opportunity to think and act must be taken into consideration. And although she may not have taken the safest course or acted with the best judgment or greatest prudence, she can recover for injuries sustained upon showing that she was required to act suddenly or in an emergency, without opportunity for deliberation. It has been said that when a choice of evils only is all that is left to a man, he is not to be blamed if he chooses one, nor if he chooses the greater, if he is in circumstances of difficulty or danger at the time, and compelled to decide hurriedly." *Dyer v. R. R.,* 71 N. Y., 228; *Hamlin v. Budge,* 56 Fla., 342; *R. R. v. Tauhey,* 67 Ark., 209; *Gannon v. R. R.,* 173 Mass., 40; *Elec. Co. v. Hudgin,* 100 Va., 419. The subject is elaborately considered by *Hoke, J.,* in *Norris v. R. R.,* 152 N. C., 513-515, citing numerous cases; and especially is this so in this case, where the injunction to jump came from a watchman of the defendant. It could not be negligence for her upon the spur of the moment to act upon such direction from the servant of the defendant, even if it might have been wiser, if she had had full time for reflection, to have done otherwise.

There was no error in admitting the town ordinance, and we think it has been properly proven, C. S., 2825; and the instructions of the court

in respect thereto were correct. There was sufficient evidence to go to the jury of the negligence of the defendant, and the question whether a timely warning was given was properly submitted to the jury, which found that this was not done.

Nor can we see any foundation for the defendant's objection to admission of proof that the injuries of the plaintiff were embarrassing and humiliating. The authorities are ample that this testimony was properly admitted. *Britt v. R. R.,* 148 N. C., 37; *Carmichael v. Tel. Co.,* 157 N. C., 21.

Evidence as to the physical and mental condition of the watchman was competent as tending to show negligence in having a watchman incompetent physically in that place. The exceptions to the refusal to give special instruction number five cannot be sustained, as it was substantially given in the charge.

The criticism of the charge that it is in conflict with *Kimbrough v. Hines* loses sight of the important fact that the plaintiff in this action was not the driver of the car. It was held in the *Kimbrough case* that while the law does not impose on the driver of the car the absolute duty to stop that his failure to do so may be considered by the jury on the question of the exercise of ordinary care, and that it was error to omit this element in the charge, but this principle can have no application to the plaintiff, who was a guest in the car, to whom the negligence of the driver, if any, will not be imputed, and who had no control over the car and could not stop it.

All that could be required of the plaintiff was to look and listen and to warn the driver of approaching danger, and this duty was imposed on her in the charge.

The prayers for instructions are also objectionable on the same ground in that they in effect required the judge to charge that the plaintiff could not recover if the driver of the car was negligent.

The court charged on the above phases of the case as follows:

"If you should find from the evidence that the plaintiff in approaching the crossing could have seen, by looking, this moving train and could have known the train was moving towards the crossing, by listening, and that she could have seen it in time to have requested the driver of the car to stop, and you find that if she had requested the driver of the car to stop she would have stopped in time to avoid the injury, that would be the proximate cause of the injury and not the negligence of the defendant, and you should answer the first and second issues 'No.'

"If you find from the evidence that the watchman was there with his board, and gave timely warning—the defendants contend that he told them to stop, and waved his board when they were twenty feet away, and contends that there was plenty of time in which the car could have been stopped before reaching the crossing.

"Or if you shall find that Weaver, one of the brakemen, was there at the crossing, and before the automobile got within twenty feet of the crossing he warned them of danger and told them to stop, and they disregarded such warning and drove on, the defendant company would not be liable, and you would answer the first issue 'No.'

"If you find from the evidence and by the greater weight thereof, the burden being on the defendant to so satisfy you, that the plaintiff, by looking and listening, could have seen this moving train in time to have prevented the injury, and that her sister, Mrs. Scott, would have stopped the car if she had been requested to do so, and find that was the cause of the injury, she would be guilty of contributory negligence, and you would answer the third issue 'Yes.'

"If Mrs. Scott was guilty of contributory negligence in driving the car, her negligence would not be imputed to the plaintiff. The plaintiff is not responsible for the negligence of Mrs. Scott, unless you find that the plaintiff was negligent in not looking and listening, and not requesting Mrs. Scott to stop, and further find that Mrs. Scott would have stopped if the plaintiff had so requested.

"If you find that Mrs. Scott was negligent in driving the car, and you find that was the sole cause, the sole proximate cause of the injury, why then you would answer the first and second issues 'No.' "

As to exceptions 17, 18, and 19, it is sufficient to say that if there was warning given in time to stop the automobile, which the plaintiff's evidence contradicts, this cannot be imputed to the plaintiff. In the recent case of *Hunt v. R. R.*, 170 N. C., 444, it is said by *Hoke, J.*: "There was evidence tending to show that the driver of the automobile looked and listened before entering on the crossing, and it is held with us that it is not always, and as a matter of law, required that a vehicle should come to a stop before endeavoring to cross. *Shepard v. R. R.*, 166 N. C., 539, and *Elkins v. R. R.*, 76 W. Va., 733. Furthermore, it is held by the great weight of authority that negligence on the part of the driver of an automobile will not, as a rule, be imputed to another occupant or passenger unless such other occupant is the owner or has some kind of control over the driver. This is undoubtedly the view prevailing in this State. See a learned opinion on the subject by *Associate Justice Douglas* in *Duval v. R. R.*, 134 N. C., 331, citing *Crampton v. Ivie*, 126 N. C., 894, both of these decisions being approved in the more recent case of *Baker v. R. R.*, 144 N. C., 37-44. And see, also, a valuable article on the subject in 2 Ruling Case Law, secs. 42 and 43, in which the position is also stated with approval, and *Nonn v. R. R.*, 232 Ill., 387. There is nothing in the case of *Bagwell v. R. R.*, 167 N. C., 611, that in any way militates against this position. On the contrary, the principle announced in *Crampton v. Ivie* is there expressly approved, and the verdict and judgment in favor of the railroad was

sustained on the ground that, under the charge of the court, the jury had necessarily negatived any negligence on the part of the defendant."

An examination of the whole charge shows that it presented every phase of the controversy to the jury, and in some respects was perhaps more favorable to the defendant than it was entitled to have.

On careful consideration of all the exceptions, we find

No error.

WALKER, J., dissenting: There was testimony tending to show that the automobile, in which were Mrs. Scott and Mrs. Parker (the plaintiff), was being driven very slowly as it approached this dangerous crossing, which was a well known one to the driver, as she had passed over it before. Mrs. Scott herself testified: "As I came on towards the crossing where we were to cross, I slowed down my car almost to a standstill," and again she stated: "I went towards this crossing; I was going slowly, because I had just crossed some tracks. Possibly I was going along there about two or three miles an hour. When I first saw these cars I was going very slowly. I had come by express office very slowly. I always go slowly along there, for I realize the danger of the point and always slow down." The defendants' testimony tended to show that the signal to stop was given when the car was as much as twenty-five feet from the track on which the backing train moved, and it varied from that down to ten feet. Ed. Weaver testifying that Mr. Poe, who was stationed at the crossing, was waving his "stop signal," and witness hollered to them, "Look out, ladies, stop," and at that moment the car had reached a point ten feet from the pass track, on which was the train. Mr. J. S. Holliday testified that when they were told to stop the car was about twenty-five feet from the track. The testimony tends to show that several, Ed. Weaver, Mr. Poe, and J. S. Holliday, and perhaps others, signaled them to stop at short intervals from the time the car was as much as twenty-five feet distant to the time it was ten feet from the track, and even afterwards, as Mr. Poe did so until the near approach of the train compelled him to leave the track and he barely escaped to a place of safety. Ed. Weaver and Mr. Poe were close by the car when they signaled, and Mr. Holliday was about forty yards away, but everything, as he said, was in plain view.

There can be no question, if the defendants' testimony is credible, that ample warning was given to stop the car because of imminent danger ahead, as Poe had the danger signal in this hand and was waving it, and all of them at the place were frantically warning them with loud voices to stop then and there. The strong evidence that they did hear the signal was that of Mr. Holliday, who stated that he was coming from the tool-house, and when he was about forty yards distant from

the crossing he first heard the signal given by Mr. Poe and Ed. Weaver.

Some of the witnesses testified that they heard the watchman and brakeman "yelling" for them to stop, and L. J. Holloman that he heard some one yelling "stop" when he was about one hundred and twenty-five yards from there. Several witnesses testified that it was daylight when the accident occurred.

There is other evidence for the defendant, upon the question of timely warning to stop the car and not cross the tracks, but it is not the strength or weight of the evidence we are so much concerned with, as the fact that there was evidence that sufficient warning was given.

In view of this testimony, the defendant requested that certain instructions be given to the jury, which were refused, and exception taken thereto, and also to an instruction by the court, as follows: "If you find from the evidence and by the greater weight thereof, the burden being on the defendant to so satisfy you, that the plaintiff by looking and listening could have seen this moving train in time to have prevented the injury, and that her sister, Mrs. Scott, would have stopped the car if she had been requested to do so, and find that was the cause of the injury, she would be guilty of contributory negligence, and you would answer the third issue 'Yes,' but unless you do so find you would answer the issue 'No.'"

The instructions rejected were as follows:

"1. If the jury shall find from the evidence that the driver of the automobile heard the warning of the crossing watchman and stopped the automobile near the track and at a place of safety, and that she then started the automobile and drove upon the track, and that plaintiff, in attempting to get out of the automobile, fell and was run over by the train and injured, the jury will answer the first issue 'No,' and the second issue 'No.'

"2. If the jury shall find from the evidence that the defendant's conductor sent the defendant's switchman, Ed. Weaver, to watch the crossing, and that Ed. Weaver was standing at the crossing as the automobile and the train approached the point of collision, and that he gave the driver of the automobile notice that a train was approaching in time for the driver to have stopped the automobile before driving on the track, the jury will answer the first issue 'No,' and the second issue 'No.'"

In view of this testimony, the judge was in error when he charged the jury that the driver of the car, as she approached the crossing, was required only to look and listen, and if she did both and neither saw nor heard the moving train, which was backing on the track, it was not negligence for her to proceed and cross the tracks. The duty to look and listen was the only one the law imposed upon Mrs. Scott or the plaintiff, as the jury would be led to infer from the instruction, whereas,

we have held in *Kimbrough v. Hines,* 180 N. C., 274, that a person approaching a crossing is required to do more than merely to look and listen, as he must also exercise the care which a person of ordinary prudence would use in the same circumstances, and that the failure to stop before crossing the tracks might be considered on the question of due care, with such other evidence as bore upon the question. We also held in the *Kimbrough case* that if there was negligence of the plaintiff in the respect indicated, it would not be excused by the failure of the defendant's engineer to ring the bell or blow the whistle as a signal that the train was moving, or about to move, toward the crossing. There was evidence to support this view, for some of the witnesses said that it was daylight, and the plaintiff, as well as the driver, could have seen the train if they had looked, or heard it if they had listened, or, at least, there was evidence from which the jury could have found as much.

But his Honor charged the jury that if Mrs. Scott, the driver, was guilty of negligence, it would not be imputed to the plaintiff, unless the plaintiff was negligent in not looking and listening, and not requesting Mrs. Scott to stop the car, and the jury find that Mrs. Scott would have complied with the request. There are two objections to this instruction: (1) It should have been qualified by the further instruction that if Mrs. Scott was negligent, and this was the sole proximate cause of the injury, the plaintiff could not recover, and the jury should answer the first issue "No," as in that case the plaintiff would be bound by Mrs. Scott's negligence, though she was a mere guest in the car. *Crampton v. Ivie,* 126 N. C., 894; *Bagwell v. R. R.,* 167 N. C., 611; 2 R. C. L., 1205. The negligence of Mrs. Scott would not be imputable to plaintiff only if it united with defendant's negligence to cause the injury. If it was itself the proximate cause of the wrong to plaintiff, the doctrine of imputable negligence had no application whatever, and the instruction must have misled the jury. (2) But the judge further stated in this instruction, and two others, that if the plaintiff would have seen or heard the moving train from her side of the automobile, if she had looked and listened, in time to have prevented the injury, and Mrs. Scott would have stopped her car if plaintiff had requested her to do so, and the jury find that this was the cause of the injury, it would be negligence on her part, and they should answer the first issue "No," and the second issue "Yes." If the plaintiff knew the train was backing towards them, it was her duty to have warned the driver, Mrs. Scott, and requested her to stop the automobile, regardless of whether she would have done so or not. If she could have seen or heard the train moving had she looked and listened and she failed to look and listen she was negligent, as the car was approaching a railroad crossing, which is a place of danger always, where trains are continually passing. There was no positive

evidence to show that Mrs. Scott would have stopped, but the law of self-preservation raises a strong presumption that she would instinctively have done so. But the learned judge, as it appears, confused the doctrine of imputable negligence with the independent negligence of the plaintiff herself, whereas, they are two quite different things in the law. As we have already said, whether Mrs. Scott's negligence was imputable to the plaintiff depended upon whether it was concurrent with that of defendant, and if so, it was not so imputable. If Mrs. Scott's negligence was the sole proximate cause, the negligence of the plaintiff, if any, was a negligible quantity, as Mrs. Scott's negligence in that case would alone be sufficient to defeat plaintiff's recovery; that is, if it was the sole proximate cause of the injury, and his Honor so instructed the jury, but not in connection with or as a qualification of his previous instruction just commented upon. The jury could not, therefore, tell which one was correct. *Edwards v. R. R.,* 132 N. C., 99.

But, however the case may be so far, the instruction that the jury should answer the first issue "Yes," if the defendant had a watchman at the crossing, and he failed to give timely warning of the moving train, and no other warning or signal was given by bell or whistle, or otherwise, until the plaintiff was too near the track for it to avail her, and this was the proximate cause of the injury, was erroneous. This instruction entirely excluded such notice or warning of the approaching train as plaintiff or the driver would have acquired by looking and listening, or by otherwise exercising the care of an ordinarily prudent person before crossing so dangerous a place as every one described it to be. We must keep in mind that the jury were instructed to answer the first issue "Yes," if the particular warnings enumerated in the instruction were not given.

It also excluded from consideration the notice she would have received from stopping if under the circumstances an ordinarily prudent person would have done so at such a dangerous crossing as the plaintiffs themselves admit it is, and as this Court describes it. But it cannot be successfully questioned that it was error to make the plaintiff's exercise of proper care depend upon what her sister and companion, who was driving the car, would have done. She should have performed her part without regard to her sister's conduct, and then she could well acquit herself of any blame. Her sister's negligence cannot be imputed to her, and would not affect the case adversely to her unless it was the sole proximate cause of the injury to her. There is no statute of this State abolishing grade crossings or requiring gates to be maintained at them to prevent accidents of this kind. This is a matter of public policy, and is peculiarly within the province of the Legislature to deal with, but even the absence of gates does not excuse the failure to look and

listen in proper cases, and there was evidence that it was daylight, and the photograph tends to show that the train could have been seen by the exercise of ordinary care, and the *Kimbrough case* (180 N. C., 274) requires that the driver of the car should look and listen and stop if necessary for safety in crossing.

The question as to whether the plaintiff exercised proper care when she jumped from the car was for the jury, even though she was confronted by a sudden peril. She must have acted as a person of ordinary care would have done in similar circumstances.

As to the Federal statute: This act of Congress was passed when the railroads were returned to the owners in 1920, and this action was brought since its passage. The act of 1920 requires that all suits be brought against the agent appointed to represent the Government and not otherwise, and that any judgment recovered shall be paid out of the revolving fund. The railroad company is not a necessary or proper party under this act, the Government's agent being the only defendant. There was a perfectly good reason for this change. The Government thereby assumed sole responsibility for all damages sustained during its administration, and provided a fund to pay them, and a speedy method of collection. The cases, therefore, which are cited in the opinion of the Court have no application, as they were based entirely upon prior statutes, and the act of 1920 was not considered by any of them. It would, therefore, seem that the action should have been brought against the Federal agent and not against the company, as the agent is constituted the sole defendant. *Lanier v. Pullman Co.,* 180 N. C., 406, refers to this method of adjustment, but does not refer specifically to the act of 1920, as the question was not involved in that case.

In our opinion the action should be dismissed as to the railroad company, or, at least, that, as there was material error, there should be a new trial.

STACY, J., concurring in dissent.