WALKER, J., dissenting; STACY, J., concurring in the dissenting opinion.
This action is brought to recover $100.000 damages for personal injuries sustained in a crossing accident at Weldon, N.C. 10 February, *Page 97 
1920. Action was originally brought against Seaboard Air Line Railway Company and Walker D. Hines, Director-General of Railroads, but at the trial, by consent of counsel, John Barton Payne, Director General of Railroads, as agent designated by the President under the Transportation Act, was substituted as defendant in lieu of Walker D. Hines.
Plaintiff alleges negligence in that the defendant's crossing watchman caused the driver of the automobile in which plaintiff was riding as a passenger to be stopped on the railroad track immediately in front of a train moving backward, in the dark, without a light, and without giving any signal, at a greatly frequented crossing in the town of Weldon, and in that the defendant failed to keep a proper lookout at the crossing, and failed to have a light at the rear of the train, as required by ordinance of the town of Weldon.
Plaintiff suffered the loss of both legs, one above and one below the knee, as the result of the accident.
Defendants based their defense upon three theories of the case: first, that there was no negligence on the part of the defendants; second, that the plaintiff was guilty of contributory negligence; and third, that the negligence of plaintiff's sister, who was driving the car, was the proximate cause of plaintiff's injury.
The jury returned a verdict for $45,000, and defendants appealed.
The plaintiff was riding as a passenger in an automobile, and on 10 February, 1920, at a greatly frequented crossing, a little after six p.m., the automobile was struck by the rear car of a backing train. It was a drizzly, rainy evening, and in the automobile, besides the driver, Mrs. Scott, there was the plaintiff seated on the front seat to the right of the driver, four young ladies, and Mrs. Scott's son, when it reached the crossing in front of the Terminal Hotel in Weldon. At that point where the defendant's track crosses the street, there are four tracks which converge until the street which is the First Street in the town (and on which the party was traveling) intersects Walnut Street. Beyond the crossing the railroad and First Street extended are almost parallel with each other, going west, the direction in which the automobile was moving. Before the intersection of said First Street and the railroad the angle is very acute and the railroad was to the right of the street getting nearer and nearer until the crossing is reached.
The rear of the car had the curtains in place, but on the front seat, where the plaintiff sat, there were no curtains, she being on the right and *Page 98 
[EDITORS' NOTE: THE MAP IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 181 N.C. 98.] *Page 99 
the driver, Mrs. Scott, to the left. The evidence is that the car was being driven along the street slowly and came almost to a standstill, and the evidence is that both Mrs. Scott and Mrs. Parker looked across the tracks and up and down the tracks, and both testified that they were clear. As they drove along First Street going west towards the crossing, which is just in front of the hotel, the plaintiff testified she saw some freight cars standing still at the right some 400 feet, near the Union Station. Just prior to the approach of the automobile to the crossing, a freight train of 19 cars had come from the direction of Roanoke Rapids to Weldon, and had pulled up across this crossing, and then had gone on in the direction of the Union Station, and had passed the switch between the crossing and the Union Station preparatory to backing into another track, and these cars were standing still, according to the plaintiff's testimony, near the Union Station. As the automobile slowly approached the crossing these cars commenced backing towards the crossing slowly, without a light, or any one upon the advancing train to give warning.
The evidence is that the conductor had gone into the yard office to report the train, and sent out one of his brakeman, who reached the train too late. The engineer was at the other end of the 19 cars, down towards the river beyond Union Station, and knew nothing of the collision until he had put his train away. One of the brakemen, who was on the other side of the train at the switch, could not see the automobile, and the other brakeman was about half way the train and knew nothing about what was happening. According to the evidence, this was the situation as the automobile approached the crossing, which it is testified was clear. The defendant had provided a flagman or crossing-master at that point. He had formerly worked in the express office, but on account of his age and infirmities the company had retired him, and the defendant had then employed and stationed him at this point. The evidence was that he was old and infirm, and that at this crossing more vehicles passed in a day than at any other crossing in the county.
The evidence is that just as the automobile started across the track this agent appeared and cried, "Stop, stop, stop! Jump, jump, jump!" Mrs. Parker, who was on the right and nearest the car on the backing train, started to open the door and attempted to get out. One foot was on the ground and one on the running board when the forward car, moving slowly and noiselessly, struck her on the shoulder, knocked her down, ran over and crushed one of her legs just above the knee; and then the train, for some unexplained reason, moving back cut off the other leg between the ankle and the knee; her shoulder was also broken. The automobile was struck just in rear of the front wheel and pushed around. The front door was battered and the front fender bent. One *Page 100 
[EDITORS' NOTE: THE MAP IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 181 N.C. 100.] *Page 101 
of the young ladies was thrown over the head of another who was trying to leave the car.
The plaintiff was 44 years of age, and her normal weight before injury was 223 pounds. There was testimony as to her injuries and sufferings by physicians and others.
There is evidence that the sun set 10 February, 1920, at 5:36 p. m. This was not a scheduled train, and the crossing — master who gave the order to jump was not examined as a witness.
Both defendants assign as errors that the court refused to set the verdict aside because it was against the weight of the evidence, and because the damages were excessive, but these are matters that are not reviewable on appeal. Edwards v. Phifer, 120 N.C. 405, and citations in Anno. Ed.; Trust Co. v. Ellen, 163 N.C. 47; Boney v. R. R., 145 N.C. 248, in Anno. Ed., Cooke v. Hospital, 168 N.C. 256.
The defendant railroad company and the Director General, John Barton Payne, filed separate answers, and the railroad company seeks to avoid liability on the ground that it was being operated by the Government.
The act of Congress to provide for the termination of the Federal control of railroads, approved 20 February, 1920, sec. 206 (a), provides that actions at law "of such character as prior to Federal control could have been brought against such carrier, may, after the termination of Federal control, be brought against an agent designated by the President, and such action may be brought in any court which but for Federal control would have jurisdiction of the cause of action had it arisen against such carrier." Another subsection provides that final judgment shall be promptly paid out of the revolving fund created by section 210 of said act.
This exception need not be again discussed, as it has been fully considered, and we have repeatedly decided that both the Director General and the corporation itself are proper parties in such actions as this.Clements v. R. R., 179 N.C. 225; Hill v. Director General, 178 N.C. 609, citing numerous cases. The above have been reviewed and reaffirmed since in Gilliam v. R. R., 179 N.C. 508; Vann v. R. R., 180 N.C. 659;McGovern v. R. R., ib., 219.
The plaintiff rests her case largely upon the ground that it was dark, and the ordinances of Weldon required that there should be a "light at the rear end of the train and front end of the train at night"; and even if it was not night or not dark, the defendant failed to give timely warning, and there was evidence that there was no light at the end of train, and no notice given of the approach of the train except the warning to jump given by the defendant's crossing — master, which contributed, it would seem, if it did not cause the injury to the plaintiff. In any *Page 102 
event, the running of the train backwards without a light, signal, or other warning of its approach was negligence. Shepherd v. R. R., 163 N.C. 518, quoting numerous cases, among them Purnell v. R. R., 122 N.C. 832, in which the plaintiff's intestate was killed by a backing train in the same town of Weldon, and at a short distance from the scene of this occurrence, the train backing into the depot without displaying a light from the front end of the leading car, and without a flagman to give warning. The precedents are too numerous, as quoted in Shepherd's case, to be again reviewed.
The evidence in the present case was that the sun set at 5:36 p. m., and that the injury to the plaintiff occurred a few minutes after 6 o'clock; that there was no light on the advancing train; that it was a cloudy evening, and drizzling rain, and that it was a most frequented crossing. It was for the jury to say whether or not it was negligence for the defendants not to have had a light on the advancing end of the train, which was running backwards. Powers v. R. R., 166 N.C. 602; McNeil v. R. R.,167 N.C. 396; Dunn v. R. R., 174 N.C. 258. And, also, whether there was a light or not.
There was no error in admitting proof of the ordinance of the town. The ordinance did not change the law already laid down in Purnell v. R. R.,122 N.C. 840. It was negligence to back the train over the crossing without a light if it was dark, or without a flagman if it was not. Lloyd v. R. R.,118 N.C. 1010; Mesic v. R. R., 120 N.C. 490; Allen v. R. R., 149 N.C. 260. The authorities are thus summed up in Russell v. R. R., 118 N.C. 1109: "A person who drives up to a crossing in a town or city where there is a custom to close the gates so as to prevent the passage of vehicles when trains are approaching, and open them when there is no danger, is not negligent if he drives upon the track, because the watchman is not on duty." The plaintiff had the right to expect the company would not omit to give the usual alarm, and is not culpable for acting upon that supposition. The watchman should have known if this train was going to back. The train had passed there a few minutes before.
The occupants of the automobile had a right to rely upon the protection that should have been given at this public crossing by a light on the front end of the backing car, or by a flagman or by a watchman, especially as there were no gates. It would seem from the evidence that when the watchman discovered that the train was backing, he did run out and give a warning by shouting to "Stop, stop"; but this must have been too late, as he added, according to the evidence, "Jump, jump, jump," and in obedience to that direction the plaintiff did jump and was injured. It was for the jury to say where the flagman was and what he did and whether he gave sufficient and timely warning. As the *Page 103 
injunction to stop and the order to jump were given simultaneously, it must have been too late, and the train must have already reached the crossing, as the plaintiff was injured in obeying the instructions to jump. Evidently the flagman did not appear until the automobile was either on the track or near enough to it to be struck by the backing train. There was evidence that the watchman had been sick for a long time before he was given this appointment, and on account of his infirmities had been retired by his former employer, the express company. He was old and slow in his movements. There was ample evidence to submit to the jury the question as to negligence of the defendants, and it was fairly submitted to the jury, who have found it in the affirmative.
As to the contributory negligence, the burden of which was upon the defendants, the plaintiff was not driving the automobile, but was only a guest or passenger in the car. There is no evidence that she had any control over the movements of the car, and the negligence of the driver, if there was any, cannot be imputed to the passenger. Duval v. R. R.,134 N.C. 333; Baker v. R. R., 144 N.C. 43, and citations (Anno. Ed.);Hunt v. R. R., 170 N.C. 444, which distinguishes Bagwell v. R. R.,167 N.C. 611, which was relied upon by the defendants; Thompson on Negligence, sec. 502; 20 R. C. L. Negligence, sec. 137; Herman v. R. I., L.R.A., 1515 A, 766.
In sudden peril or emergencies while the plaintiff was "bound to take active measures to preserve herself from impending harm, she was by no means held to the same judgment and activity under all circumstances. The opportunity to think and act must be taken into consideration. And although she may not have taken the safest course or acted with the best judgment or greatest prudence, she can recover for injuries sustained upon showing that she was required to act suddenly or in an emergency, without opportunity for deliberation. It has been said that when a choice of evils only is all that is left to a man, he is not to be blamed if he chooses one, nor if he chooses the greater, if he is in circumstances of difficulty or danger at the time, and compelled to decide hurriedly." Dyer v. R. R., 71 N.Y. 228;Hamlin v. Budge, 56 Fla. 342; R. R. v. Tauhey, 67 Ark. 209; Gannon v. R.R., 173 Mass. 40; Elec. Co. v. Hudgin, 100 Va. 419. The subject is elaborately considered by Hoke, J., in Norris v. R. R., 152 N.C. 513-515, citing numerous cases; and especially is this so in this case, where the injunction to jump came from a watchman of the defendant. It could not be negligence for her upon the spur of the moment to act upon such direction from the servant of the defendant, even if it might have been wiser, if she had had full time for reflection, to have done otherwise.
There was no error in admitting the town ordinance, and we think it has been properly proven, C. S., 2825; and the instructions of the court *Page 104 
in respect thereto were correct. There was sufficient evidence to go to the jury of the negligence of the defendant, and the question whether a timely warning was given was properly submitted to the jury, which found that this was not done.
Nor can we see any foundation for the defendant's objection to admission of proof that the injuries of the plaintiff were embarrassing and humiliating. The authorities are ample that this testimony was properly admitted. Britt v. R. R., 148 N.C. 37; Carmichael v. Tel. Co., 157 N.C. 21.
Evidence as to the physical and mental condition of the watchman was competent as tending to show negligence in having a watchman incompetent physically in that place. The exceptions to the refusal to give special instruction number five cannot be sustained, as it was substantially given in the charge.
The criticism of the charge that it is in conflict with Kimbrough v.Hines loses sight of the important fact that the plaintiff in this action was not the driver of the car. It was held in the Kimbrough case that while the law does not impose on the driver of the car the absolute duty to stop that his failure to do so may be considered by the jury on the question of the exercise of ordinary care, and that it was error to omit this element in the charge, but this principle can have no application to the plaintiff, who was a guest in the car, to whom the negligence of the driver, if any, will not be imputed, and who had no control over the car and could not stop it.
All that could be required of the plaintiff was to look and listen and to warn the driver of approaching danger, and this duty was imposed on her in the charge.
The prayers for instructions are also objectionable on the same ground in that they in effect required the judge to charge that the plaintiff could not recover if the driver of the car was negligent.
The court charged on the above phases of the case as follows:
"If you should find from the evidence that the plaintiff in approaching the crossing could have seen, by looking, this moving train and could have known the train was moving towards the crossing, by listening, and that she could have seen it in time to have requested the driver of the car to stop, and you find that if she had requested the driver of the car to stop she would have stopped in time to avoid the injury, that would be the proximate cause of the injury and not the negligence of the defendant, and you should answer the first and second issues `No.'
"If you find from the evidence that the watchman was there with his board, and gave timely warning — the defendants contend that he told them to stop, and waved his board when they were twenty feet away, and contends that there was plenty of time in which the car could have been stopped before reaching the crossing. *Page 105 
"Or if you shall find that Weaver, one of the brakemen, was there at the crossing, and before the automobile got within twenty feet of the crossing he warned them of danger and told them to stop, and they disregarded such warning and drove on, the defendant company would not be liable, and you would answer the first issue `No.'
"If you find from the evidence and by the greater weight thereof, the burden being on the defendant to so satisfy you, that the plaintiff, by looking and listening, could have seen this moving train in time to have prevented the injury, and that her sister, Mrs. Scott, would have stopped the car if she had been requested to do so, and find that was the cause of the injury, she would be guilty of contributory negligence, and you would answer the third issue `Yes.'
"If Mrs. Scott was guilty of contributory negligence in driving the car, her negligence would not be imputed to the plaintiff. The plaintiff is not responsible for the negligence of Mrs. Scott, unless you find that the plaintiff was negligent in not looking and listening, and not requesting Mrs. Scott to stop, and further find that Mrs. Scott would have stopped if the plaintiff had so requested.
"If you find that Mrs. Scott was negligent in driving the car, and you find that was the sole cause, the sole proximate cause of the injury, why then you would answer the first and second issues `No.' "
As to exceptions 17, 18, and 19, it is sufficient to say that if there was warning given in time to stop the automobile, which the plaintiff's evidence contradicts, this cannot be imputed to the plaintiff. In the recent case of Hunt v. R. R., 170 N.C. 444, it is said by Hoke, J.;
"There was evidence tending to show that the driver of the automobile looked and listened before entering on the crossing, and it is held with us that it is not always, and as a matter of law, required that a vehicle should come to a stop before endeavoring to cross. Shepard v. R. R.,166 N.C. 539, and Elkins v. R. R., 76 W. Va. 733. Furthermore, it is held by the great weight of authority that negligence on the part of the driver of an automobile will not, as a rule, be imputed to another occupant or passenger unless such other occupant is the owner or has some kind of control over the driver. This is undoubtedly the view prevailing in this State. See a learned opinion on the subject by Associate Justice Douglas inDuval v. R. R., 134 N.C. 331, citing Crampton v. Ivie, 126 N.C. 894, both of these decisions being approved in the more recent case of Baker v.R. R., 144 N.C. 37-44. And see, also, a valuable article on the subject in 2 Ruling Case Law, secs. 42 and 43, in which the position is also stated with approval, and Nonn v. R. R., 232 Ill. 387. There is nothing in the case of Bagwell v. R. R., 167 N.C. 611, that in any way militates against this position. On the contrary, the principle announced in Crampton v. Ivie
is there expressly approved, and the verdict and judgment in favor of the railroad was *Page 106 
sustained on the ground that, under the charge of the court, the jury had necessarily negatived any negligence on the part of the defendant."
An examination of the whole charge shows that it presented every phase of the controversy to the jury, and in some respects was perhaps more favorable to the defendant than it was entitled to have.
On careful consideration of all the exceptions, we find
No error.